In the MARRIAGE OF Martha HAYNES, formerly Martha Ann Krohn, Petitioner-Respondent,

and

Billy Harland Krohn, Respondent-Appellant.

No. CX–83–1512.

Court of Appeals of Minnesota.

Feb. 1, 1984.

Patrick J. Leary, Quernstrom, Doering, Pederson, Leary & Murphy, Marshall, for petitioner-respondent.

Paul M. Malone, Malone & Mailander, Slayton, for respondent-appellant.

Considered and decided by POPOVICH, C.J., and SEDGWICK and FOLEY, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal of two orders of Judge John D. Holt, Murray County Family Court, is a case of first impression in Minnesota. Subsequent to the marriage dissolution, the minor children began to receive social security dependent's benefits. Appellant, Billy Harland Krohn, seeks to have those benefits credited against his monthly support obligation. Alternatively, appellant seeks to have the social security benefits signed over to him.

On July 5, 1983, the trial court denied appellant's requests and awarded attorney's fees to respondent, Martha Haynes Krohn. On September 29, 1983, the trial court denied appellant's motion for amended findings or a new trial and awarded additional attorney's fees to respondent. We affirm.

## FACTS

The parties to this action are Martha Haynes Krohn and Billy Harland Krohn. The parties were married on April 29, 1970, at which time Martha was 23 and Billy was 52 years of age. On August 16, 1976, the marriage was dissolved due to an irretrievable breakdown in the marriage relationship.

The order of dissolution incorporated a stipulation between the parties. Under the stipulation and order, the two children of the marriage, Scott Michael Krohn, born July 30, 1969, and Jason William Krohn, born December 1, 1971, remained in the custody of Martha. Appellant agreed to pay child support of $300.00 per month and $400.00 of respondent's attorney's fees and costs. Appellant received all real estate accumulated during the marriage, as well as the two businesses, Krohn Drainage and State Contracting Inc.

On December 4, 1980, the dissolution decree was amended to reflect a subsequent stipulation between the parties. The amended decree transferred custody of Jason to appellant. Correspondingly, appellant's child support obligation was reduced to $150.00 per month for Scott.

On June 7, 1983, Mr. Krohn celebrated his 65th birthday. Thereafter, he began receiving social security retirement benefits. As dependent-minors of appellant, Scott and Jason Krohn also receive social security benefits. The benefits, $234.00 per month for each child, are paid to the custodial parent for the benefit of the child.

On June 9, 1983, appellant filed a motion seeking an order directing respondent to deliver to appellant all social security checks received for the benefit of Scott Krohn. On June 14, 1983, respondent filed a counter-motion seeking amendment of the dissolution decree. The proposed amendment was that the social security benefits received for Scott Krohn constitute the support so long as they are received. By the order of July 5, 1983, the court denied both motions and awarded respondent $250.00 in attorney's fees.

On July 13, 1983, appellant filed a motion seeking amended findings of fact and an amended order, or, alternatively, a new trial. The motion was filed pursuant to Rule 59, Minn.R.Civ.P. The trial court denied the motion, finding that Rule 59 did not apply to motions to amend a previously issued dissolution order. The trial court also awarded an additional $200.00 in attorney's fees for respondent.

Mr. Krohn appeals these decisions pursuant to Rule 103.03(e) of Minn.R.Civ.App.P.

## ISSUES

1. Whether a parent ordered to make support payments is entitled, as a matter of law, to reduce those payments by the amount of social security dependent's benefits received by the child through the parent's account?

2. Whether the trial court abused its discretion in awarding attorney's fees?

## ANALYSIS

■ 1. A child's receipt of social security benefits from a parent's account could affect a support obligation in two possible ways. First, the benefits may be grounds for modification of the support order. Second, the benefits could be considered payments from the parent in lieu of part or all of the monthly support obligation.

Modification of a support order is controlled by Minn.Stat. § 518.64 (1982). The statute provides in part that:

The terms of a decree respecting maintenance or support may be modified upon a showing of substantially increased or decreased earnings of a party or substantially increased or decreased need of a party, which makes the terms unreasonable and unfair. On a motion for modification of support, the court shall take into consideration the needs of the children and the financial circumstances of the custodial parent's spouse, if any. A modification which decreases support or maintenance may be made retroactive only upon a showing that any failure to pay in accord with the terms of the original order was not willful. A modification which increases support or maintenance shall not be made retroactive if the obligor has substantially complied with the previous order.

Minn.Stat. § 518.64, subd. 2 (1982).

Receipt of the social security dependency benefits is ' a change of circumstances. This change alone, however, does not necessarily make the terms of the order unreasonable and unfair. Appellant also claimed other changes in circumstances. He failed to substantiate his claims, however. Based on the sparse record before this court, we find the trial court's denial of the motion for modification of the child support award was proper.

The question of whether benefits derived from a parent's social security account are payments from the parent is one of first impression. It is indisputable that the minor children receive the benefits because of contributions paid by appellant. It does not necessarily follow, however, that appellant has a significant property interest in the social security funds.

In *Flemming v. Nestor*, 363 U.S. 603, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960), the United States Supreme Court thoroughly analyzed the social security system. Discussing the interest of social security contributors, the Court stated:

* * * each worker's benefits, though flowing from the contributions he made to the national economy while actively employed, are not dependent on the degree to which he was called upon to support the system by taxation. It is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments.

It is hardly profitable to engage in conceptualizations regarding "earned rights" and "gratuities."

&ast; &ast; &ast; &ast; &ast; &ast;

The "right" to Social Security benefits is in one sense "earned," for the entire scheme rests on the legislative judgment that those who in their productive years were functioning members of the economy may justly call upon that economy, in their later years, for protection from "the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near." *Helvering v. Davis*, supra, 301 U.S. [619] at page 641, 57 S.Ct. [904] at page 909 [81 L.Ed. 1307]. But the practical effectuation of that judgment has of necessity called forth a highly complex and interrelated statutory structure. Integrated treatment of the manifold specific problems presented by the Social Security program demands more than a generalization. That program was designed to function into the indefinite future, and its specific provisions rest on predictions as to expected economic conditions which must inevitably prove less than wholly accurate, and on judgments and preferences as to the proper allocation of the Nation's resources which

evolving economic and social conditions will of necessity in some degree modify.

To engraft upon the Social Security system a concept of "accrued property rights" would deprive it of the flexibility and boldness in adjustment to ever-changing conditions which it demands. See Wollenberg, Vested Rights in Social-Security Benefits, 37 Ore.L.Rev. 299, 359. It was doubtless out of an awareness of the need for such flexibility that Congress included in the original Act, and has since retained, a clause expressly reserving to it "[t]he right to alter, amend, or repeal any provision" of the Act. § 1104, 49 Stat. 648, 42 U.S.C. § 1304, 42 U.S.C.A. § 1304. That provision makes express what is implicit in the institutional needs of the program. See Analysis of the Social Security System, Hearings before a Subcommittee of the Committee on Ways and Means, House of Representatives, 83d Cong., 1st Sess., pp. 920–921. It was pursuant to that provision that § 202(n) was enacted.

\* \* \* \* \* \*

We must conclude that a person covered by the Act has not such a right in benefit payments as would make every defeasance of "accrued" interests violative of the Due Process Clause of the Fifth Amendment.

*Id.* at 609–611, 80 S.Ct. at 1372–1373, 4 L.Ed.2d at 1443–1444 (citations omitted).

The fact that the children's social security benefits do not reduce respondent's own benefits also undercuts any assertion of a property interest. Additionally, contrary to appellant's claim, he would not be primarily liable for overpayments made to the noncustodial child.

Generally, there will be no question of liability for repayment of an overpayment when direct payment has been made and the person who received the incorrect benefits is alive. In such case, the overpaid person is primarily liable for repayment and should be notified of the overpayment (GN 02201.055A.).

\* \* \* \* \* \*

If representative payment is involved, the beneficiary and representative payee may both be primarily liable for repayment. \* \* \*

The beneficiary's liability is due to his having been unjustly enriched at the expense of the trust fund. The beneficiary is therefore liable for repayment of any incorrect payments used for his benefit. That the beneficiary was not directly involved in obtaining the payment in no way relieves him of liability, although it could be material in determining fault for purposes of a waiver determination.

Only to the extent that incorrect payments were not expended on the beneficiary, is the beneficiary not liable for repayment. \* \* \*

The representative payee is personally liable for repayment when (1) the incorrect benefits were not used for the support and maintenance of the beneficiary or (2) the representative payee is at fault in causing the overpayment (GN 02205.-005).

General Manual, Social Security Manual, Transmittal Three, January 1982.

Finally, as *Nestor* demonstrates, there are situations where contributions to the system will not entitle the contributor to benefits. We therefore conclude that a child's receipt of social security benefits from the account of a parent charged with support does not constitute payments from that parent. At least one other jurisdiction has expressly adopted this position. *See Craver v. Craver,* 649 S.W.2d 440, 444 (Mo.App.1983) (en banc).

Any change in either the amount or manner of support must be accomplished by judicial modification of the current support order.

If the obligor is to be allowed to reduce his payments by the amount of Social Security benefits paid through his account, it must be because the changed economic circumstances of the parties entitle him to do so. This determination must be made by the court that maintains control over the decree.

*Craver v. Craver*, at 445; *see also Nakaerts v. Nakaerts*, 106 Ill.App.3d 166, 170, 61 Ill.Dec. 950, 953–54, 435 N.E.2d 791, 794–95 (1982); *Gibson v. Gibson*, 110 Mich. App. 666, 670, 313 N.W.2d 179, 181 (1981).

■ 2. The authority for awarding attorney's fees in dissolution cases is embodied in Minn.Stat. § 518.14 (1982). The statute provides in part that:

> In a proceeding brought either for dissolution or legal separation under chapter 518, the court, from time to time, after considering the financial resources of both parties, may require one party to pay a reasonable amount necessary to enable the other spouse to carry on or to contest the proceeding, and to pay attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement or after entry of judgment. The court may adjudge costs and disbursements against either party. The court may authorize the collection of money awarded by execution, or out of property sequestered, or in any other manner within the power of the court.

*Id.*

The trial court awarded respondent $250.00 in the July 5, 1983 order and an additional $200.00 in the September 29, 1983 order. In the memorandum attached to the September 29, 1983 order, the trial court explained the award of attorney's fees.

> [T]he record indicates that at the time of the divorce in 1976 the Respondent owned 1100 acres of farm land in Murray County; a cottage on Lake Shetek and two businesses, Krohn Drainage and All-State Contracting. His loss in farming operations does not necessarily mean that he is unable to pay Petitioner's attorney's fees. He was required to pay her attorney's fees in 1976 and again in 1980. The award of $200.00 attorney's fees for this motion is fair and reasonable.

While this court would prefer a more detailed explanation of the award, we recognize that the trial court has lived with this case since its inception. Considering his familiarity with the case and the relatively small amount of the awards for attorney's fees, we find no abuse of discretion.

## DECISION

The court orders of July 5, 1983 and September 29, 1983 are affirmed.

Appellant shall receive no credit to his support obligation for the social security benefits his son receives. At such time as appellant seeks a modification of the support order pursuant to section 518.64, subd. 2, however, these benefits should be considered a factor in determining the needs of the children and financial circumstances of the parties.

Appellant shall pay the attorney's fees awarded to respondent by the lower court and the amount of $400.00 for these proceedings.

Affirmed.