Phillip P. SCHMIDT, Relator,

v.

MODERN METALS FOUNDRY, INC., and Western National Insurance Company, and Commissioner of Department of Labor and Industry, intervenor, Respondents.

No. C1–88–302.

Supreme Court of Minnesota.

June 10, 1988.

---

Raymond R. Peterson, Minneapolis, for relator.

Peter J. Pustorino, Minneapolis, for respondents.

SIMONETT, Justice.

We hold that the disability schedules adopted by the Commissioner of Labor and Industry under the 1983 legislature's revision of the Workers' Compensation Act do not violate art. 1, § 8 of our state constitution. We affirm the compensation judge's decision.

On September 18, 1984, employee Phillip P. Schmidt, while at work, accidentally splashed molten aluminum on various parts of his body. As a result, he sustained second and third degree burns to his back, left leg, and left foot, as well as to the top of his head, left ear, and left ring finger. The skin on the back and left leg has mottled discoloration and is vulnerable to sunburn. The left foot is also discolored and the burns have left "particularly fragile weak crinkly paper-thin scar tissue" on the instep. The foot is also sensitive to the cold and must be protected from trauma. The changes in skin pigmentation are disfiguring. Also, the medical expert testified that the burns have caused a permanent loss of normal skin sensation and circulation, as well as a permanent adverse effect on the oil and sweat glands. Schmidt was off work for about 11 weeks, and he had surgery to replace a perforated eardrum. The employee wears wool socks and Sorrell boots to protect his foot during cold weather, and he must keep his back and leg covered to protect against sunburn.

The employee's doctor gave Schmidt a disability rating of 17 percent of the whole body. The compensation judge, however, found only 2 percent disability allowed under the new disability schedule and awarded permanent partial disability benefits of approximately $1,500. The employee appealed, claiming that the disability schedule violated art. 1, § 8, the "certain remedies clause," of the Minnesota Constitution.

The Workers' Compensation Court of Appeals, noting it was not empowered to decide constitutional issues, affirmed the compensation judge's decision without further discussion. The employee now brings the case to us on certiorari.

In 1983 the legislature significantly amended the Workers' Compensation Act. The legislature authorized the Commissioner of Labor and Industry to "establish a schedule of degrees of disability resulting from different kinds of injuries." Minn. Stat. § 176.105, subd. 1 (1986). This new schedule replaces the statutory schedule formerly codified at § 176.101, subd. 3 (1982), *repealed* 1983 Minn.Laws ch. 290, § 173 (effective January 1, 1984). The schedule is set out in extensive detail in new promulgated rules with a formidable numbering system. Minn.R. 5223.0240 is entitled "Burns" and contains four subparts, each with subdivisions. The compensation judge found that employee Schmidt's burns came under subpart 2, subdivision E, which reads:

> Sensitivity to dust, chemical, or petroleum exposure; altered sweating; or apocrine gland dysfunction. For one or any combination of these conditions, the whole body disability is:
>
> (1) * * *.
>
> (2) If the sensitivity affects 5 to 20 percent of the body surface area, 2 percent.

Under subpart 2(B), "[c]old intolerance of the hands, face, or head" is entitled also to a disability rating; however, the compensation judge did not apply this provision because the employee's cold intolerance was to his left foot. Under subpart 2(D), "[s]ensitivity to sun exposure" also receives a disability rating, but here the sensitivity must be to the hands or face, and the employee's sun sensitivity was to his back and left leg. Thus, under the rules, the compensation judge found disability only for the gland and sensory dysfunction of the skin affecting 5 to 20 percent of the body, for which a 2 percent rating was specified. The employee contends that in adopting the new rules, "the Commissioner not only neglected to schedule permanency ratings for sun sensitivity and cold intolerance for anything but the hands, face, and head, but the Commissioner actually *eliminated* the prior coverage of these areas from the statute" (emphasis in original). *Compare* Minn.Stat. § 176.101, subd. 3(48) (1982) (compensation for burns under the old law).

The employee asks that the rules establishing the new disability schedule for workers' compensation injuries "be declared unconstitutional in their application insofar as they deny the employee in this case a remedy for his previously compensable burn injuries * * *." We do not understand the employee to question the adequacy or validity of the legislature's grant of authority to the Commissioner to make the rules. Moreover, the employee concedes the compensation judge properly interpreted and applied the new disability schedule to his case.

In other words, the employee's claim is based solely on art. 1, § 8 of our state constitution. He argues only that the 2 percent disability rating of the body as a whole excludes compensation he would have had under the former workers' compensation law, and that this result denies him a constitutionally guaranteed remedy. To comply with the constitution and the legislative mandate in Minn.Stat. § 176.105, subd. 4 (1986), the employee asserts that the Commission should have provided in the new schedules for the same kinds of permanency that had existed under the old law. No other constitutional issues are raised. The issue before us, therefore, is very narrow.

Article 1, section 8 of the Minnesota Constitution reads, "Every person is entitled to a certain remedy in the laws for all injuries or wrongs * * *." The employee concedes that he had a "reasonable substitute" remedy under the old workers' compensation law but apparently claims the new amended law eliminates this remedy with nothing put in its place.

As Justice Mitchell has observed, the certain remedy clause is a constitutional declaration of general principles and the legislature is afforded broad discretion in

determining what the remedies for injuries are to be. *See Allen v. Pioneer-Press Co.*, 40 Minn. 117, 122, 41 N.W. 936, 938 (1889), *quoted in Breimhorst v. Beckman*, 227 Minn. 409, 435, 35 N.W.2d 719, 735 (1949). If common-law rights are taken away, then some reasonable substitute must be put in their place. In considering the validity of this trade-off, "a constitutional evaluation looks to the ultimate scheme in its entirety." *Tracy v. Streater/Litton Industries*, 283 N.W.2d 909, 914 (Minn.1979). In other words, the employee here, to mount a successful attack on the new disability schedules, must do more than raise objections to some aspect of the schedules; he must make a showing that the overall compensation scheme is not a reasonable substitute. This he has failed to do.

■ First of all, the employee is not really claiming an abrogation of his common-law tort rights. Rather, he claims he should have the compensation rights he would have had under the old workers' compensation law. But the new schedule cannot be unconstitutional simply because the employee arguably receives a lower disability rating than he would have under the old law. To so hold would mean that the legislature could never decrease benefits, only increase them. The employee misconceives the nature of the constitutionally required trade-off.

Secondly, looking to the ultimate scheme of the new law, it cannot be said the employee is constitutionally without a reasonable substitute remedy. Employee Schmidt is not quite correct in saying he received no compensation for the burns on his back, leg, and foot. The disability schedule under which he received his permanent partial disability award covers skin sensitivity affecting 5 to 20 percent of the body surface (including the back, leg, and foot) for dust or chemical exposure, or altered sweating, or apocrine gland dysfunction. Schmidt also received temporary total disability for the 11 weeks he was unable to work, as well as payment of all his medical expenses. Under the new workers' compensation scheme, permanent partial disability compensation is scheduled so that all employees with the same injury are considered to have the same degree of permanent partial disability. But more importantly, permanent partial disability is only one part of the compensation scheme. The compensation plan is a comprehensive two-tier system coordinating temporary benefits, retraining programs, impairment compensation, and economic recovery compensation, as well as permanent total and partial benefits. *See generally* Altman, Benanav, Keefe & Volz, *Minnesota's Workers' Compensation Scheme: The Effects and Effectiveness of the 1983 Amendments*, 13 Wm. Mitchell L.Rev. 843 (1987). In return for this compensation system, the worker relinquishes his or her common-law tort action. *Breimhorst*, 227 Minn. at 436, 35 N.W.2d at 735.

In this case, we might add, the employee has not shown that he would have gotten 17 percent disability under the old law. His doctor arrived at 17 percent by "adapting" the percentages given in the *new* schedule to the employee's disabilities. True, the new schedule does not compensate for some symptoms a burn victim may have (*i.e.*, cold intolerance of the feet is not covered while that of the face and hands is), or for some cosmetic disfigurement (face, head, neck or hand disfigurement is compensable while cosmetic disfigurement to the legs and back is not). But these "inconsistencies," whatever their merits or dismerits, do not render the overall schedule constitutionally infirm under the certain remedies clause. *Tracy*, 283 N.W.2d at 915 (as part of trade-off, employer pays both permanent partial and temporary benefits); *Breimhorst*, 227 Minn. at 436, 35 N.W.2d at 735 (nondisabling disfigurement not remedied). In establishing the new disability schedule, the legislature directed the Commissioner to consider providing higher benefits for more severe conditions and less benefits for minor conditions than was the case under the old schedule, § 176.105, subd. 4 (1986), and expressly stated that the new benefits need not be the same as they were for the same injuries under the old schedule. *Id.* In passing the 1983 amendments, the legislature attempted to decrease costs, avoid benefit stacking, reduce litigation, reduce the need for reliance on often conflicting medical testimony, and

promote objectivity, consistency, and more uniform results in workers' compensation decisions. These would appear to be legitimate legislative objectives. *See Haney v. International Harvester Co.*, 294 Minn. 375, 385, 201 N.W.2d 140, 146 (1972). For our constitutional analysis here, however, it is enough to conclude that the legislature provided an adequate substitute for whatever common-law remedies the new schedule may have abrogated. We hold there is no violation of the certain remedies clause of our constitution.

Affirmed.

YETKA, Justice, concurs.

YETKA, Justice (concurring specially).

I concur in the majority opinion only because of the narrow ground on which the appeal is based. Petitioner primarily argues that benefits cannot be decreased in any form and that his benefits cannot be less than he would have received had he applied for benefits under the pre–1983 statute. Employee has not made out a good case on either ground because, as the majority points out, he has not even shown the benefits he would be entitled to under the "old law."

I write separately, however, because I believe that the statute did not contemplate the adoption of rules that ignore some types of injuries which, when added to injuries specifically mentioned in the rules, can significantly increase the disability rating of the whole body. This appears to be clear in the statute itself which states:

> (b) The commissioner shall by rulemaking adopt procedures setting forth rules for the evaluation and rating of functional disability and the schedule for permanent partial disability and *to determine the percentage of loss of function of a part of the body based on the body as a whole, including internal organs, described in section 176.101, subdivision 3, and any other body part not listed in section 176.101, subdivision 3, which the commissioner deems appropriate.*

Minn.Stat. § 176.105, subd. 4(b) (1986) (emphasis added).

In another portion of the same section, the legislature declared its intent to be:

> that the commissioner establish a disability schedule which, assuming the same number and distribution of severity of injuries, the aggregate total of impairment compensation and economic recovery compensation benefits under section 176.101, subdivisions 3a to 3u be *approximately equal* to the total aggregate amount payable for permanent partial disabilities under section 176.101, subdivision 3, *provided, however, that awards for specific injuries under the proposed schedule need not be the same as they were for the same injuries under the schedule pursuant to section 176.101, subdivision 3.*

*Id.* at subd. 4(a) (emphasis added).

Although the statute appears to allow the commissioner to adopt rules which would apportion benefits differently, nothing in the statute indicates that the legislature intended to narrow the definition of "permanent disability."

From the record in this case, we do not know whether the commissioner's rules were properly promulgated nor whether the effect of those rules is to eliminate injuries which the legislature intended to be considered in arriving at disability to the whole body. Thus, we are not in a position to reverse the Workers' Compensation Court of Appeals. I would affirm on the narrow grounds stated.