**Robert D. WEBER, Relator,**

v.

**CITY OF INVER GROVE HEIGHTS, et al., Respondents.**

**No. C4–90–942.**

Supreme Court of Minnesota.

Nov. 9, 1990.

Mary M. Morin, Minneapolis, for relator.

David L. Christianson, Minneapolis, for respondents.

Jon K. Murphy, St. Paul, for amicus.

## OPINION

POPOVICH, Chief Justice.

Robert Weber appeals from the denial of permanent partial disability workers' compensation. Compensation Judge Barnett denied permanent partial disability benefits on the basis that Weber's rib injury did not fall within the disability schedules set forth in Minn.R. 5223.0010–.0250 (1989). Neither Judge Barnett nor, on appeal, the Workers' Compensation Court of Appeals had jurisdiction to decide two issues raised by Weber: (1) whether the Commissioner of Labor and Industry exceeded the scope of statutorily delegated authority by the exclusion of a class of permanently injured workers from the permanent partial disability schedule; and (2) whether the denial of permanent partial disability benefits violates Weber's constitutional right to equal protection guaranteed by the fourteenth amendment of the United States Constitution and article 1, section 2 of the Minnesota Constitution. *See Schmidt v. Modern Metals Foundry, Inc.,* 424 N.W.2d 538, 540 (Minn.1988); *Quam v. State,* 391 N.W.2d 803, 808 (Minn.1986). Concluding the legislature did not grant the commissioner authority to exclude disabilities from the permanent partial disability schedules, we reverse and remand to the compensation judge for a determination of Weber's permanent disability, if any.

### I.

On May 20, 1985, Robert Weber fell off a drag used to smooth a ballfield while in the course of employment with respondent City of Inver Grove Heights, injuring the right side of his rib cage. Weber was on light duty for approximately one week. He continues to work for the city on regular duty in his previous position in the parks maintenance department. At least five doctors evaluated Weber's rib injury. Diagnoses range from "chronic pain in the lower rib cage area," to "slipping rib syndrome secondary to a trauma." Weber currently uses a TENS unit to alleviate constant pain from the injury.

As part of the overhaul of the state workers' compensation system in 1983, the

legislature authorized the Commissioner of Labor and Industry to establish a schedule of degrees of disability arranged according to the body part impaired. Act of June 7, 1983, ch. 290, § 86, 1983 Minn.Laws 1310, 1358–60, *codified at* Minn.Stat. § 176.105, subd. 4 (1988). The schedule was intended to avoid subjective and widely divergent impairment ratings by physicians for the same injuries, which had fostered litigation. The new schedules promote objectivity by providing a percentage figure of disability, formerly left to the discretion of the physician. The schedule was also intended to be exhaustive; over 1,000 categories of injuries are included. Pursuant to rulemaking authority in Minn.Stat. § 176.105, subd. 4, the commissioner also promulgated Minn.R. 5223.0010, which states in relevant part:

> Subp. 2. **Interpretation of schedules.** Only the categories in the schedules in this chapter may be used when rating the extent of a disability.  * * *.
>
> Subp. 3. **Disabilities not part of schedules.** A category not found within this chapter shall not be used to determine permanent partial disability.

Minn.R. 5223.0010, subps. 2, 3 (1989).

On May 19, 1988, Weber filed a claim petition for workers' compensation benefits and, pursuant to a settlement conference on October 31, 1988, received 1.6 weeks of temporary total disability benefits ($480), two weeks of temporary partial disability benefits ($159.01), and medical expenses. Weber requested a de novo hearing on the issue of permanent partial disability benefits. One of Weber's examining physicians, Dr. Terrence Capistrant, had determined the injury fell outside the permanent partial disability schedule, but by comparing the injury to others of this sort, determined Weber's disability at 10% of the whole body. Compensation Judge Barnett denied Weber's permanent partial disability claim on the basis that the rib injury did not fall within the disability schedules. Weber concedes the injury falls outside the schedule, but argues the exclusion of nonscheduled injuries from disability compensation is outside the statutory authority of the commissioner and violates his right to equal protection of the laws under the state and federal constitutions. Neither the compensation judge nor, on appeal, the Workers' Compensation Court of Appeals, had jurisdiction to decide these issues. Finding no statutory authority, express or implied, allowing the Commissioner of Labor and Industry to exclude permanent injuries from the permanent partial disability schedule, we therefore need not reach the constitutional issue Weber raises.

## II.

The commissioner's authority to adopt rules for permanent partial disability compensation is found in Minn.Stat. § 176.105, which states:

> Subdivision 1. The commissioner of labor and industry shall by rule establish a schedule of degrees of disability resulting from different kinds of injuries.
>
> Subd. 2. The commissioner shall by rule establish a schedule of internal organs that are compensable and indicate in the schedule to what extent the organs are compensable under section 176.101, subdivision 3.
>
> *       *       *       *       *       *
>
> Subd. 4.  * * *
>
> (b) The commissioner shall by rulemaking adopt procedures setting forth rules for the evaluation and rating of functional disability and the schedule for permanent partial disability and to determine the percentage of loss of function of a part of the body based on the body as a whole, including internal organs, described in section 176.101, subdivision 3, and any other body part not listed in section 176.101, subdivision 3, which the commissioner deems appropriate.

Minn.Stat. § 176.105, subds. 2, 3, 4 (1988). Pursuant to section 176.105, the commissioner adopted a comprehensive schedule of disabilities based on exhaustive research, which included input from the medical community and a survey of workers' compensation programs in every other state in the nation. Indeed, Weber does not challenge the validity of the schedule in its entirety. Pursuant to the same rulemaking authori-

ty, however, the commissioner also adopted Minn.R. 5223.0010, which excludes from permanent partial disability benefits employees whose injuries fall outside the schedule. The rule excluding nonscheduled injuries is the narrow basis on which Weber challenges the commissioner's exercise of authority.

The legislature did not expressly authorize the commissioner to exclude injuries resulting in functional impairment from the permanent partial disability schedule. Therefore, the issue before the court is whether such authority is implied. "[A]ny enlargement of express powers by implication must be fairly drawn and fairly evident from the agency objectives and powers expressly given by the legislature." *Peoples Natural Gas Co. v. Minnesota Public Utilities Comm'n*, 369 N.W.2d 530, 534 (Minn.1985). *See also* Minn.Stat. § 14.45 (1988). The legislature provided guidance to the commissioner in rulemaking under section 176.105 by setting forth various factors to be considered. *See* Minn.Stat. § 176.105, subd. 4. Accordingly, if the rule excluding nonscheduled injuries from the permanent partial disability schedule is "fairly drawn and fairly evident" from these considerations, then it is a proper exercise of agency rulemaking authority.

The legislature mandated that the commissioner establish a schedule which:

assuming the same number and distribution of severity of injuries, the aggregate total of impairment compensation and economic recovery compensation benefits under section 176.101, subdivisions 3a to 3u [new schedules] be approximately equal to the total aggregate amount payable for permanent partial disabilities under section 176.101, subdivision 3 [old schedules], provided, however, that awards for specific injuries under the proposed schedule need not be the same as they were for the same injuries under the schedule pursuant to section 176.101, subdivision 3. The schedule shall be determined by sound actuarial evaluation and shall be based on the benefit level which exists on January 1, 1983.

Minn.Stat. § 176.105, subd. 4(a) (1988). Although the enabling legislation appears to allow the commissioner to adopt rules that would apportion benefits differently from the pre–1983 apportionment, we see nothing in the statute to enlarge the express powers, even by implication, to exclude disabilities completely.

Weber alleges he has suffered the type of functional impairment meant to be compensated. Under the commissioner's rules, however, he is not entitled to compensation merely because of an apparent oversight in drafting the schedules.[1] Although the schedule is meant to be exhaustive, the Workers' Compensation Court of Appeals has observed:

It is a difficult task to reduce human conditions to the precision of statutory language, designing it to meet every possible situation and medical condition. But no matter how comprehensive and all encompassing the statute may be, there will still be situations and medical conditions that are compensable, but do not fit neatly into an express category.

*Sletten v. American Hoist & Derrick*, 39 W.C.D. 346, 354, *aff'd without opinion* 408 N.W.2d 864 (Minn.1987); *see also Bolden v. Acme Foundry Co.*, 41 W.C.D. 652, 654, *aff'd without opinion* 435 N.W.2d 820 (Minn.1989); *Armstrong v. Potlatch Corp.*, 40 W.C.D. 806, 808, *aff'd without opinion* 420 N.W.2d 623 (Minn.1988). We agree that every functional impairment cannot be anticipated in a schedule. Accordingly, the legislative intent to compensate for all functional impairment is thwarted by a rule that results in arbitrary limitation of compensation to those injured workers whose permanent impairments fall in the schedule. The rule excluding nonscheduled injuries therefore cannot be implied from the agency objectives expressly given, as required by *Peoples Natural Gas*.

---

1. Neither the city nor the attorney general on behalf of the Commissioner of Labor and Industry offers a principled basis on which to exclude Weber's injuries from permanent partial disability compensation.

The enabling legislation also mandates the rules promote objectivity and consistency in the evaluation of impairment. Minn. Stat. § 176.105, subd. 4(b). The city and state as intervenor argue the rule excluding nonscheduled injuries from compensation is necessary to achieve objectivity and consistency in application of the schedules and to decrease litigation. Specifically, if doctors are allowed to deviate from the schedules and assign a subjective percentage of functional disability, the same litigiousness and lack of uniformity that marked the system prior to 1983 will result.

While we recognized these goals as legitimate legislative objectives in *Schmidt v. Modern Metals Foundry, Inc.*, 424 N.W.2d 538, 541–42 (Minn.1988), a rule adopted in pursuit of legislative goals cannot subvert the primary purpose behind the legislation. *Green v. Whirlpool Corp.*, 389 N.W.2d 504, 506 (Minn.1986) (administrative rule cannot conflict with legislation). As we stated in *Peoples Natural Gas*, "It is not enough that the * * * [rule] would be useful * * * as an enforcement measure. The [agency] remains a creature of statute." 369 N.W.2d at 535. Similarly, while the rule excluding nonscheduled injuries arguably facilitates consistency and objectivity in impairment ratings, the rule conflicts with the very purpose of permanent partial disability compensation, to compensate for functional impairment.

The legislature has been asked directly on at least one occasion to remedy an inadvertent exclusion from the permanent partial disability schedules. *See* Act of May 11, 1987, ch. 87, § 1, 1987 Minn.Laws 153, 153–54, *codified at* Minn.Stat. § 176.1011 (1988) (permanent partial disability rating for loss of taste or smell three percent of whole body). This piecemeal approach to compensating functional impairment demonstrates the unworkable nature of a rigid rule excluding nonscheduled injuries. We find it unreasonable to require employees whose injuries are excluded from the schedule to approach the legislature to secure compensation. At the same time, we recognize the efficacy of a scheduled basis of compensation, and note, by way of analogy, similar problems dealt with in the criminal Sentencing Guidelines. Similar to the permanent partial disability schedules, the Offense Severity Reference Table was adopted as part of the Guidelines to reduce disparity of treatment among those similarly situated. If an offense is excluded or inadvertently omitted from the Offense Severity Reference Table, however, "judges should exercise their discretion by assigning an offense a severity level which they believe to be appropriate." Minnesota Sentencing Guidelines II.A.05 and II.A.06. Similarly, the commissioner might achieve consistency and objectivity by allowing compensation judges discretion to assign the nonscheduled injury to its closest compensable category in the schedule.

What the commissioner cannot do is exalt consistency and objectivity above the very purpose of compensation for functional impairment. Accordingly, we find Minn.R. 5223.0010, subp. 2 and subp. 3, which exclude nonscheduled injuries resulting in functional impairment from permanent partial disability benefits, to be outside the commissioner's statutory authority. Having decided the case on these grounds, we need not reach the constitutional issue also presented by Weber. *See Wegan v. Village of Lexington*, 309 N.W.2d 273, 279 (Minn.1981). The case is remanded to the Office of Administrative Hearings for a determination of Weber's disability rating, if any.

Reversed and remanded.