James G. BOEDINGHEIMER,
Lower Court Respondent,

v.

LAKE COUNTRY TRANSPORTATION
and State Fund Mutual Insurance
Company, Respondents,

and

Memorial Hospital/Home
of Perham, Relator.

No. CX–91–2110.

Supreme Court of Minnesota.

June 5, 1992.

John E. Diehl, Larkin, Hoffman, Daly & Lindgren, Bloomington, and Andrew J. Mitchell, Law Offices of Hennessey and Mitchell, Minneapolis, for relator.

Andrew W. Lynn, Johnson, Lynn & Associates, Eden Prairie, David A. Stofferahn, Minneapolis, for Lower Court respondent, James Boedingheimer.

Hubert H. Humphrey, III, Atty. Gen., Jon K. Murphy, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae, Com'r of Dept. of Labor & Industry.

David Feinwachs, Gen. Counsel, Minn. Hosp. Ass'n, Minneapolis, for amicus curiae MN Hosp. Ass'n.

SIMONETT, Justice.

This case involves the interpretation and validity of a rule of the Department of Labor and Industry which establishes a medical fee schedule for health care servic-

es for workers' compensation injuries. The decision of the Workers' Compensation Court of Appeals (WCCA) ruled that the fee schedule set out in the rule applied to hospital services. We reverse.

In 1988 and 1989, Memorial Hospital and Home of Perham (Perham Hospital) submitted bills to the employee's workers' compensation carrier, State Fund Mutual Insurance Company, for services rendered to the employee Boedingheimer. The bills were for an electrocardiogram, a chest x-ray, an electroencephalogram, and two physical therapy sessions, and they totaled $311.26. State Fund Mutual took the position that the billings exceeded the charges for such services as allowed in the medical fee schedule established by Minn.R. 5221.-0500(A), and, after recalculating the charges under the fee schedule, paid the Perham Hospital $283.20.

Dissatisfied with the $28.06 discount, the hospital filed a medical payment request with the Minnesota Workers' Compensation Division, and, in due course, the matter was heard by a compensation judge. The judge dismissed the hospital's claim, ruling that the hospital was limited to the medical fee schedule established by Rule 5221.-0500(A) of the Department of Labor and Industry (here Department or DOLI). Perham Hospital appealed to the Workers' Compensation Court of Appeals, which affirmed the compensation judge.

Perham Hospital now seeks our review by certiorari. The parties agree this is a test case to determine whether or not hospital charges in workers' compensation cases are covered by the Department's fee schedule governing health care providers. The Department and the Minnesota Hospital Association have filed amicus briefs.

Minn.Stat. § 176.136, enacted in 1979, says the commissioner (originally the commissioner of insurance; since 1983, the commissioner of the Department of Labor and Industry) "shall by rule establish procedures for determining whether or not the charge for a health service is excessive." The statute requires the commissioner to limit the allowable charges "to the 75th percentile of usual and customary fees or charges based upon billings for each class of health care provider." [1]

Pursuant to the statute, rules (first temporary and then permanent) were adopted setting out an elaborate medical fee schedule, listing the different health care providers, the kind of services rendered by each, and the maximum fee for each service. For example, Rule 5221.2300, which covers "Physician Services; Radiology," goes on for several pages listing the different radiology services for different parts of the body as provided by a doctor of medicine or osteopathy and then sets out the maximum fee for each type of service.

The statute requires the allowable fees to be based on provider billings from the previous year. Consequently, each year the Department would undertake a rulemaking proceeding and amend the fee schedule to update the dollar amounts. In 1985 the legislature added subdivision 5 to the statute to allow the Department to update the fee schedule annually by notice given in the State Register in lieu of formal rulemaking, provided that the update meets certain statistical billing criteria. *See* footnote 4, *infra*.

The fee schedule lists hospitals as a separate provider, but the only service listed thereunder is the rate for a semi-private room. The rule further provides that a charge is subject to the medical fee sched-

---

1. Minn.Stat. § 176.136, subd. 1 (1988), provides in part:

The commissioner shall by rule establish procedures for determining whether or not the charge for a health service is excessive. In order to accomplish this purpose, the commissioner shall consult with insurers, associations and organizations representing the medical and other providers of treatment services and other appropriate groups. The procedures established by the commissioner shall

limit the charges allowable for medical, chiropractic, podiatric, surgical, hospital and other health care provider treatment or services, as defined and compensable under section 176.-135, to the 75th percentile of usual and customary fees or charges based upon billings for each class of health care provider during all of the calendar year preceding the year in which the determination is made of the amount to be paid the health care provider for the billing.

ule if it "conforms to a description contained in the maximum fee schedule * * * *for the appropriate kind of medical provider.*" Minn.R. 5221.1000, subp. 2 (1989) (emphasis added). From the fee schedule's beginning in October 1983 and up to November 1989, neither the Commissioner of Insurance nor the Department of Labor and Industry applied the maximum fee schedule to any other services provided by hospitals.[2] Indeed, the Department told hospitals, in answer to their inquiries, that the fee schedule did not cover them. Most significantly, in October of 1984, during the rulemaking proceedings making the rules permanent, the Department issued its Statement of Need and Reasonableness in which it expressly stated that hospital charges (other than semi-private room rates) were not included in the fee schedule. Two reasons were given: (1) hospital operations differed significantly from a physician's practice; and (2) data on hospital services was not available due to coding differences.

In November 1989, the WCCA decided *Kendall v. Amerect, Inc.,* File No. 502–52–7174, (Minn. WCCA, Nov. 22, 1989). In that case the WCCA ruled that the fee schedule did cover services provided by hospitals, if those services could have been performed outside a hospital and were listed on the fee schedule. (Thus, for example, a hospital's charge for the technical component of an x-ray performed at the hospital was subject to the fee schedule.) After *Kendall,* the Department changed its position and applied the fee schedule to those in-hospital services that could as well have been performed outside the hospital.

*Kendall* was appealed to this court but the appeal was then withdrawn. Apparently there were concerns about the adequacy of the record (particularly with respect to the data base underlying the fee schedule).

This case, then, has been chosen to test the validity of the *Kendall* decision.

As the record in this case discloses, hospital billing information was never used in creating the dollar amounts listed in the maximum fee schedule for the years in question. It appears the coding system used by hospitals for reporting these charges was a problem. The Department received its data for the fee schedule from Blue Cross/Blue Shield of Minnesota, and Blue Cross submitted to the Department only data for which the provider had used the CPT–4 procedure code on its billings. Hospitals did not use this code; instead they used the UB–82 procedure code, which apparently was the code used to meet Medicare requirements. Beginning January 1, 1988, some hospitals began submitting bills to Blue Cross under the CPT–4 procedure code. While Blue Cross forwarded this hospital data to the Department in 1989, it warned that the data was as yet unreliable. Consequently, the Department representative excluded these hospital billings from the data base for the 1989 rules. The record is silent on the use of hospital billings for the data base in subsequent years.

As we see it, the issues are:

(1) Does the maximum fee schedule in Rule 5221.0500 apply to charges for hospital services?

(2) If not, does the enabling statute permit the exclusion of hospital services from the fee schedule? Or would such an exclusion "exceed the statutory authority" of the commissioner?

## I.

Does the maximum fee schedule include hospital services? To answer this question, we must consider the language and structure of the rule and the Department's intent and practice.

---

**2.** Hospital services for all providers are also subject, under the rule, to some six other restrictions on excessiveness of the charges. Thus, for example, Minn.R. 5221.0500(B) provides that if a fee is not specified in the medical fee schedule, it is nevertheless excessive if the charge exceeds that which prevails in the same geographic community for similar services or treatment as specified in Minn.Stat. § 176.135, subd. 3.

In this case the parties have stipulated that the Perham Hospital's charges for services rendered the employee comply with all other rule restrictions. Thus we are assured of a true test case involving only the medical fee schedule.

State Fund Mutual argues that the plain language of the rules suggests that hospitals are included. For example, Rule 5221.-1800, entitled *Cardiography*, states it applies to "cardiographic services, and to a provider licensed as a doctor of medicine or a doctor of osteopathy." As the insurer points out, this rule (and others like it) indicates no exception for cardiovascular services when performed in a hospital and billed by a hospital. Or, as the WCCA reasoned, the fee schedule is based "on the *service* provided and *not* on who provided the service or where the service was provided."

On the other hand, the Rule's format sets out classes of health care providers and lists hospitals as one such class of provider.[3] Under each class are listed the different services involved and the corresponding fee. Here hospitals appear as a separate provider with only semi-private rooms listed thereunder. The fee schedule also provides for different fees when different providers provide the same service. Consequently, it would seem that hospitals, like other providers, would expect their allowable fees to be listed under their provider class and to be perhaps somewhat different than for the same service performed by another provider. The logical conclusion is that hospital service was not listed in the fee schedule, it was not covered by the schedule.

Especially telling, we think, is that the Department (and the commissioner of insurance earlier), up to the *Kendall* decision, has unequivocally stated that hospital services (except for semi-private rooms) were *not* covered by the fee schedule. The Department so stated on different occasions, including a formal statement in its Statement of Need and Reasonableness during the rulemaking. And, finally, this was how the Department in fact administered its rule.

However, State Fund contends, and the WCCA has agreed, that the Department's crystal-clear intent to exclude is irrelevant. As the WCCA put it, "If the maximum fee schedule meets all the statutory tests created by the legislature (Minn.Stat. § 176.-136, subd. 5(a)-(e)) the insurers are entitled to have it applied to hospitals even though DOLI did not intend that result." Subdivision 5 does not, however, purport to tell the Department how the maximum fee schedule is to be established.[4] The only purpose of this subdivision was to obviate the need for annual rulemaking to update the maximum fee amounts; if the criteria are met (data base includes at least three different providers, at least 20 billings for the service, etc.), then notice of the updating in the State Register may be used "in lieu of" more formal rulemaking. Interesting, too, is that when subdivision 5 was enacted in 1985, the Department had openly stated that the fee schedule did not apply to hospitals; even so, the legislature gave no indication that adding subdivision 5 was intended to modify that view.

■ The WCCA observes that the Department had acquiesced in the *Kendall*

---

**3.** The hospital argues that Minn.Stat. § 176.136, subd. 1 (1988), authorizes the Department to create "classes" of health care providers, including hospitals as a class. The statute reads in pertinent part: "The procedures established by the commissioner shall limit the charges allowable for medical, chiropractic, podiatric, surgical, *hospital* and other health care provider treatment or services * * * to the 75th percentile of usual and customary fees or charges based upon billings for *each class of health care provider* * * *." (Emphasis added.)

**4.** Minn.Stat. § 176.136, subd. 5 (1988), provided:
Where permanent rules have been adopted to implement this section, the commissioner shall annually give notice in the State Register of the 75th percentile to meet the requirements of subdivision 1. The notice shall be in lieu of the requirements of chapter 14 if the 75th percentile for the service meets the requirements of paragraphs (a) to (e).
(a) The data base includes at least three different providers of the service.
(b) The data base contains at least 20 billings for the service.
(c) The standard deviation as a percentage of the mean of billings for the service is 50 percent or less.
(d) The means of the Blue Cross and Blue Shield data base and of the department of human services data base for the services are within 20 percent of each other.
(e) The data is taken from the data base of Blue Cross and Blue Shield or the department of human services.

decision and, since 1989, has apparently applied the maximum fee schedule to hospital services. This acquiescence, however, hardly qualifies as a reinterpretation by the Department of its own rule. Indeed, in this appeal the Department has filed an amicus brief in which it says it "takes no position" on whether the fee schedule applies to hospital services. Nor, it seems to us, could it be argued that the Department is simply reinterpreting its rule. To say initially that the fee schedule does not apply to hospitals and then to turn around and abruptly say that it does, would amount under the circumstances here to impermissible rulemaking. *See St. Otto's Home v. Department of Human Services,* 437 N.W.2d 35 (Minn.1989) (agency's changed interpretation of what "common ownership" means in its rules, done without explanation or notice, is impermissible rulemaking).

In short, based on the language and structural format of the rules as well as the agency's announced intent of what that language means, we have no difficulty holding that the maximum fee schedule established by Rule 5221.0500(A) does not apply to hospital services other than semi-private room rates.

## II.

Does Minn.Stat. § 176.136 permit the exclusion of hospital services from the medical fee schedule?

The answer to the question requires, first, an interpretation of the statute, and, then, a determination whether the rule complies with the statute as construed. Relator Perham Hospital argues that determination of these issues lies beyond the competence of the WCCA, citing *Quam v. State,* 391 N.W.2d 803, 809 (Minn.1986), where we held the WCCA lacked authority, as an executive branch agency, to determine whether a Department's rule adheres to the mandate of its enabling statute. The WCCA, on the other hand, denies it was deciding whether the maximum fee schedule "should" include hospital services; rather, says the WCCA, it was only deciding if the fee schedule "actually does" apply to hospital services. In other words, as we understand it, the WCCA contends it was simply construing an ambiguous rule and resolving the ambiguity by reference to the enabling statute as well as to the language and format of the rule itself.

■ No matter how the issue is framed, the validity of the rule is now before us, and our case law allows a collateral attack on the validity of an administrative rule in a contested case setting. *State v. Lloyd A. Fry Roofing Co.,* 310 Minn. 528, 530–31, 246 N.W.2d 696, 697–98 (1976); *Martin v. Wolfson,* 218 Minn. 557, 564–66, 16 N.W.2d 884, 888–89 (1944); *Minnesota Administrative Procedure* 419 (Beck, Bakken & Muck eds. 1987). It should be noted, however, that in workers' compensation cases the agency which promulgated the rule is not a party to the contested case, which can be a drawback at times. *See Martin v. Wolfson,* 218 Minn. at 564, 16 N.W.2d at 888 (the litigants may not have the means or desire to litigate all issues of validity). In this case, at least, the Department of Labor and Industry has appeared as an amicus. While the Department takes no position on whether its rule covers hospital services, it does dispute the WCCA's reasoning on the statutory scope of the Department's rulemaking authority. In *Weber v. City of Inver Grove Heights,* 461 N.W.2d 918 (Minn.1990), we considered the validity of a Department rule in a workers' compensation contested case, and we see no reason not to do so here.

■ This brings us, then, to the legal significance of the statutory mandate. Minn.Stat. § 176.136, subd. 1 (1988), provides in part:

> The procedures established by the commissioner * * * shall limit the charges allowable for * * * hospital * * * treatment or services * * * to the 75th percentile of usual and customary fees or charges based upon billings for each class of health care provider during all of the calendar year preceding * * *.

This language appears to say the Department must establish a maximum fee schedule for hospitals. Consequently, State Fund Mutual contends that the Department cannot establish a maximum fee schedule which leaves out hospitals. State Fund

Mutual relies on *Weber v. City of Inver Grove Heights, supra,* wherein we said that the Department could not leave out certain kinds of injuries from its promulgated schedule for permanent partial disability benefits because the statute did not permit such exclusions.

It seems to us the statutory directive contained in § 176.136, subd. 1, must be given a reasonable construction to mean that the 75th percentile fee schedule shall include hospital services if this can reasonably be accomplished. In *Weber* we said the exclusion of plaintiff's functional impairment from his rib injury did not come within any of the over 1000 categories of injuries listed in the disability schedule, but that it should have; and, therefore, the nonscheduled injury must be assigned to its closest compensatory category in the schedule. In reaching this conclusion, however, we assumed plaintiff's injury was excluded "because of an apparent oversight in drafting the schedules"; indeed, we said that the commissioner had failed to offer a principled basis on which to exclude plaintiff's injury. 461 N.W.2d at 921 and n. 1. In other words, we impliedly construed the statute to allow an exclusion of some injuries under some circumstances but then found such circumstances were not present. Our case here is different.

In the making of the fee schedule rule, the Department made an "affirmative presentation of facts establishing the need for and reasonableness of the proposed rule" at the public hearing. Minn.Stat. § 14.14, subd. 2 (1990). This Statement of Need and Reasonableness stated that hospital charges other than semi-private room rates were excluded from the fee schedule, explaining that "hospital services are not coded for convenient comparison" and "hospitals do not customarily match true costs to individual charges." Although we do not have the rulemaking record before us, presumably the status of hospital services and

charges was discussed in the rulemaking proceeding, and the health care providers and the insurance carriers had an opportunity to participate in the discussion. Nevertheless, in *Kendall* and again in this case, the WCCA has disagreed with the conclusions reached by the Department. The WCCA says the hospitals should have changed their codings, and that the data base from physicians' billings should suffice for similar services performed in hospitals. These, however, are complex matters where the court ordinarily defers to agency expertise. *Manufactured Housing Institute v. Pettersen,* 347 N.W.2d 238, 244 (Minn.1984). On this record, we conclude that the Department provided a reasonable basis for the exclusion of hospital services from the maximum fee schedule.

We can readily appreciate the WCCA's concern with the need for cost containment of health care costs,[5] but the fact is that the legislature has entrusted the commissioner of the Department of Labor and Industry, not the WCCA, with the responsibility for promulgating the necessary rules. State Fund Mutual has failed, on the record made before the WCCA, to show that the Department lacked sufficient reasons for excluding hospital services from the fee schedule. Indeed, as of the date of the WCCA hearing, the evidence shows there still was no reliable data base for hospital billings. Alternatively, the record indicates that notwithstanding the WCCA's attempt to characterize its decision as simply construing an ambiguous rule, the WCCA was, in effect, conducting its own rulemaking and making its own rule. This, of course, it cannot do.

We conclude (1) that the medical fee schedule established by Rule 5221.0500(A), as designed and promulgated, does not apply to hospital services (except for semi-private room rates); and (2) that exclusion of hospital services because of a lack of reliable data was not inconsistent with the

---

5. In its March 1990 report to the legislature on Health Care Costs and Cost Containment in Minnesota Workers' Compensation at p. IV, the Department noted among its research findings:
   * Minnesota's workers' compensation medical costs are growing faster than general medical care;
   * Workers' compensation accrues higher charges than Blue Cross for similar injuries;
   * Workers' compensation charges for back disorders, the most common workplace injury, are more than twice as high as charges for the same injury in Blue Cross; * * *.

statutory directive. We reverse, therefore, the decision of the WCCA reducing the Perham Hospital's charges.

The workers' compensation system is unique in many ways, not least the degree of oversight exercised by the legislature. The current session of the legislature will soon moot many of the issues raised in this case. Under a 1992 amendment to Minn. Stat. § 176.136, the 75th percentile fee schedule is to be eliminated and the commissioner is required to adopt a relative value fee schedule. The current fee schedule is to remain in effect until the commissioner promulgates a new schedule which must be effective on October 1, 1993. The new amendments also clarify the manner in which hospital services are to be dealt with in the relative value fee schedule. 1992 Minn. Laws ch. 510, art. 4, § 15 (to be codified at Minn.Stat. § 176.136, subd. 1(a)).

Is a reliable data base for hospital billings now available for a meaningful 75th percentile maximum fee schedule? We cannot tell from this record, and, in any event, the question is moot. The Department now has obtained legislative authority for a new approach to medical costs containment, an approach which will be worked out in new rulemaking proceedings in which all interested parties including the Department will participate and for which a legislative deadline has been set.

Reversed.