LILLEHAUG, Justice
(dissenting).
The requirements in the Minnesota Prevailing Wage Act (MPWA) for state high *12 way projects are straightforward. So is the administrative rule that implements them. A laborer working for a contractor or subcontractor that has agreed “to do all or part of the work under a contract” is entitled to be paid at the prevailing wage rate. In these cases, prime Contractors entered into contracts with the Minnesota Department of Transportation (MnDOT) to do state highway work. Each prime contractor entered into contracts with subcontractors to do some- of the work. To do their work, the subcontractors employed laborers to haul asphalt cement. It follows that, under the MPWA, the laborers, who were performing “work under á contract,” were entitled to be paid’ at the prevailing wage rate.
Rather than apply this logic, the court generates a fog of ambiguity. The purported ambiguity allows the court to carve out an exception to the MPWA: .prevailing wages need not be paid for hauling activities that are not “to, from, or on the site” of the project. This judicially created.exception violates the plain language of the statute and the implementing rule. Therefore, I respectfully dissent.
I.
The dispute in this case centers on the interpretation. . qf Minn.Stat. § 177.44 (2014), which is part of the MPWA, Minn. Stat. §§ 177.41-.44 (2014). Section 177.44 covers wages and hours for work performed under state highway contracts. Interpreting a statute presents a question of law that we review de novo. Gerber v. Gerber, 714 N.W.2d 702, 704 (Minn.2006). If the statute is unambiguous, we apply the statute’s plain meaning. Brayton v. Pawlenty, 781 N.W.2d 857, 363 (Minn.2010).
The statute provides:
A laborer or mechanic employed by a contractor, subcontractor, agent, or other person doing or contracting to do all or part of the work under a contract based on bids as provided in Minnesota Statutes 1971, section 161.32, to which the state is a party, for the construction or maintenance of a highway ... must be paid at least the prevailing wage rate in the same or most similar trade or occupation in the area.
Minn.Stat. § 177.44, subd. 1. The words “work under a contract” are not unclear. At a minimum, they include the work performed on the state highway project by a prime contractor and by the prime contractor’s subcontractors. The opinion of the court presents no argument to the contrary.
Applying the unambiguous statute to the facts in this case is not a difficult task. As the court describes, MnDOT contracted for two state highway projects with primé contractors ' SMC and Hardrives. SMC and Hardrives éach subcontracted with Donovan to furnish and deliver asphalt cement for the projects. Hardrives also subcontracted with Wayne to deliver asphalt cement. Thus, Donovan and Wayne, Both subcontractors, were “contracting to do ... part of the work under a contract” with MnDOT. Their laborers, who were truck drivers, were entitled to be paid at the prevailing wage rate. It is just that simple.
II.
Instead of reading the statute as it is written, the court essentially amends it by misinterpreting the administrative rule that implements the statute, Minn. R. 5200.1106 (2015). .The court carves out an exception for hauling activities that are not “to, from, or on the site of’ the highway project. But there is absolutely nothing in the statute that even hints at such an exception.
*13 The judicially created exception conflicts with our foundational rule of statutory interpretation- that we "do not, and cannot, add to a statute words intentionally or inadvertently omitted by the Legislature. See Rohmiller v. Hart, 811 N.W.2d 585,-590 (Minn.2012);. Genin v. 1996 Mercury Marquis, 622 N.W.2d 114, 117 (Minn.2001). If a carve-out to the MPWA excluding its application to off-site hauling activities is desirable as a matter of policy, that job is for the Legislature. See Axelberg v. Comm’r of Pub. Safety, 848 N.W.2d 206, 212 (Minn.2014) (“[W]e must read this state’s laws as they, are, not as some argue they should be.”) The statute plainly covers the work of, and benefits the laborers of, subcontractors on state-highway .projects.
If the rule contained the exception the court carves out today, it would violate the statute. Administrative agencies may adopt regulations to implement or make specific the language of a statute, but they may not adopt conflicting rules. See Billion v. Comm’r of Revenue, 827 N.W.2d 773, 781 (Minn.2013); Special Sch. Dist. No. 1 v. Dunham, 498 N.W.2d 441, 445 (Minn.1993) (stating that “[i]t is elemental that when an administrative rule conflicts with the plain meaning of a statute, the statute controls”). An administrative rule “cannot subvert the primary purpose behind the legislation,” Weber v. City of Inver Grove Heights, 461 N.W.2d 918, 922 (Minn.1990), which in the case of the MPWA includes extending the prevailing-wage requirement to all work performed under state highway contracts, see Minn. Stat. § 177.41 (“It is therefore the policy of this state that wages of laborers, workers, and mechanics on projects financed in whole or part by state funds'Should be comparable to wages paid for similar work in the community as a whole.”). The court’s interpretation 'of the rule violates the statute.
Properly read, the rule is consistent with the statute. Each of-the first three subparts ’of the rule shows that the hauling work covered by the statute and the rule need not be to, from, or at the site to trigger the requirement that -the subcontractor pay its laborers at the prevailing wage rate.
Subpart 1 of the rule makes clear that, on state highway projects, “the. prevailing wage rate • • • must be paid for work under the contract.” Minn. R. 5200.1106, subp. 1. There is no exception for off-site hauling. • Subpart 2(A) defines “work under the contract”, broadly as “all construction activities associated with the public works project.” Id., subp. 2(A). And sub-part 2(B) defines “contract” broadly as including “project proposals, plans, and specifications, and all requirements for labor, equipment, and materials found in such proposals, plans, and specifications.” Id:, subp. 2(B). Again, there is no exception for off-site hauling; “all” means all.
Subpart 2(A) elaborates on the meaning of “under the contract”: the phrase includes not only “any required hauling activities on the site or to or from a public works project” but also (using the word “and”) “work conducted pursuant to a contract ... regardless of whether the construction activity or work is performed by the prime contractor, subcontractor, trucking broker, trucking firms, independent contractor, or employee or agent of any of the foregoing entities, and regardless of which entity or person hires or contracts with another.” Id., subp. 2(A). The word “and” is one- of inclusion, not exclusion; Lennartson v. Anoka-Hennepin Indep. Sch. Dist. No. 11, 662 N.W.2d 125, 130 (Minn.2003) (noting that the term “and” “is the type 'of language that is typically associated with a conjunctive rule”).
*14 Plainly, subparts 1, 2(A), and 2(B) of the rule apply to all activities under the contract. There is no exception in these sub-parts for off-site hauling.
Subpart 3(B) of the rule reinforces this reading. The subpart provides six examples of hauling activities “included in hours worked and considered work under the contract.” Minn. R. 5200.1106, subp. 3(B). Examples (1) through (4) and example (6) reference hauling to, from, or at the construction site and thus do not apply here. But example (5) is exactly on point: “the delivery of materials or products by trucks hired by a contractor, subcontractor, or agent thereof, from a commercial establishment.” Id., subp. 3(B)(5). Subcontractors Donovan and Wayne were delivering materials or products by trucks from commercial establishments — in this case, asphalt cement from refineries. Their hauling fits squarely within example (5). By reading example (5) out of the rule, the court ignores the Legislature’s command that “[e]very law shall be construed, if possible, to give effect to all its provisions.” Minn.Stat. § 645.16 (2014).
To create ambiguity, the court points to the references in subparts 2(A) and 3(B) to hauling to, from, or on the construction site. But these references do not generate a reasonable alternative interpretation. All of the words on which the court relies are words of inclusion — on-site hauling work is “included and considered work under the contract” — and are not words excluding off-site hauling. Minn. R. 5200.1106, subp. 3(B). The court seems to be adopting a new principle of interpretation, which could be phrased as: inclusions expressed shall be construed to exclude all others. This is a mutation of the doctrine of expressio unius est exclusio alterius, the canon of construction (to be applied only after ambiguity is found) that “[exceptions expressed in a law shall be construed to exclude all others,” Minn. Stat. § 645.19 (2014). Indeed, the rule anticipates and answers the court’s misunderstanding. Subpart 3 provides that the examples of “work under the contract” apply “[without limiting the application of [the rule] to other situations.” Minn. R. 5200.1106, subp. 3. Plainly, the rule is not limited to hauling to, from, or on the site.
III.
Although not relevant to my plain-meaning textual analysis, I cannot help but observe that the court’s new rule of law that off-site hauling is not “work under the contract” produces two ironies. First, it allows Donovan to escape the prevailing-wage requirement on the very same projects for which Donovan and its prime contractors received Disadvantaged Business Enterprise (DBE) credit for the same labor and material Donovan furnished— under the contract. See 49 C.F.R. § 26 (2015) (allowing contractors to receive credit for employing DBEs).
The second irony is that, had the subcontractors not been paid for their work, they could have made claim on, and been paid through, the prime contractors’ payment bonds. Such bonds, generally required on state construction projects, are for the benefit of subcontractors “engaged under, or to perform the contract....” Minn.Stat. § 574.26, subd. 2 (2014).
In other words, by the court’s new rule of law, the subcontractors get the statutory benefits of working under a state contract, but the laborers performing the work for them do not. Such asymmetry is unwarranted.[1]
*15 IV.
Because I would affirm the court of appeals’ decision that, in these cases, the subcontractor hauling services were “work under the contract,” I would reach the second issue: whether the prime contractors were “commercial establishments” under the MPWA and the rule. They were not.
Although the MPWA does not contain an exception for all off-site hauling, it does expressly exempt one form of hauling. The prevailing wage rate need not be paid for “the delivery of materials or products by or for commercial establishments which have a fixed place of business from which they regularly supply the processed or manufactured materials or products.” Minn. Stat. § 177.44, subd. 2 (emphasis added).
I agree with the district courts and with the court of appeals that, in this case, SMC and Hardrives were contractors, not “commercial establishments.” In these cases, the commercial establishments were the refineries from which the subcontractors were delivering asphalt cement to the prime contractors. Donovan’s and Wayne’s deliveries were from the refineries, not by-or for the refineries. Thus, the exception is inapplicable.
Accordingly, the court should have affirmed the court of appeals in all respects.
STRAS, Justice
(dissenting).
I join in the dissent of Justice Lillehaug.

. Today’s decision appears to be influenced by the fact that the executive branch has not consistently enforced the statute and the rule. But variations in executive enforcement poli *15 cy from one administration to another do not and cannot alter our judicial function.