529 N.W.2d 456 (1995)
In re the Marriage of Sandra Lee HOLMBERG, Petitioner, Appellant,
v.
Ronald Gerald HOLMBERG, Respondent.
No. C3-94-1637.
Court of Appeals of Minnesota.
March 28, 1995.
Review Denied May 31, 1995.
*457 Lawrence H. Crosby, Crosby & Associates, St. Paul, for appellant.
Peter S. Hendrixson, Alexandra B. Klass, Dorsey & Whitney, Minneapolis, for respondent.
Richard Ross Hermes, Buffalo, for the children.
Considered and decided by CRIPPEN, P.J., PETERSON, and MANSUR,[*] JJ.

OPINION
CRIPPEN, Judge.
Appellant disputes the trial court's dissolution judgment that respondent provide custodial care for the parties' minor daughter, appellant alleging that respondent had sexually abused the daughter and other family members. The trial court found that respondent had sexually abused a minor niece ten years ago but had not abused the daughter. We affirm the placement decision.

*458 FACTS
Appellant and respondent have three minor children: two sons and a daughter, C.H., who is now age seven. After 14 days of testimony, the trial court issued a carefully detailed order placing legal and physical custody of all three children with respondent. The court found that there was no credible evidence that respondent had sexually abused C.H. But the court also found that, ten years ago, respondent had "likely" engaged in "inappropriate sexual touching" with his then ten year old niece. The court also heard testimony from two of appellant's sisters that respondent had engaged in inappropriate sexual behavior with them 20 years ago, but the court found their testimony less credible and the events too remote in time. There was no evidence of further abuse allegations against respondent until now.
In addition to findings relating to the allegations of sexual abuse, the trial court made complete findings on the other statutory factors relating to custody determinations, including: (1) at the time of trial, respondent was C.H.'s primary caretaker and had also been active in raising C.H. prior to the parties' separation; (2) it was in the best interests of the children to remain together; (3) appellant was considering moving to Arizona if the children were placed with her, which the court found would be disruptive to the children; (4) appellant had employed physically abusive discipline with her children; (5) although appellant had not been diagnosed with a mental illness or personality disorder, her emotional health was questionable; and (6) although appellant had not intentionally or maliciously made false allegations of sexual abuse, her allegations were not substantiated and, although she failed to acknowledge the consequences, her continued pursuit of these unsubstantiated allegations had a detrimental effect on C.H. and her other children. The trial court was also given the recommendation of the guardian ad litem and a custody evaluator, both of whom recommended that custody of the children be placed with respondent.
Appellant does not challenge the placement of the two older children nor any of the trial court's findings on the other statutory factors.

ANALYSIS

I. CUSTODY
Findings of fact made by the trial court must be sustained unless clearly erroneous. Minn.R.Civ.P. 52.01. When the appellant challenges a custody placement by disputing the trial court's "ultimate" findings, and other findings are accepted or adequately supported by the record, the scope of appellate review is limited to the question of whether the trial court abused its exercise of discretion. Maxfield v. Maxfield, 452 N.W.2d 219, 221 (Minn.1990). If the trial court may have misapplied the law in determining ultimate facts or mixed questions of law and fact, we are to carefully review how the trial court "explain[s]" the tie between its findings on custody factors and its conclusions. Id. (citing Minn.Stat. § 518.17, subd. 1).

A. Alleged Sexual Abuse of C.H.
A parent who has sexually abused his or her children is "disqualifie[d] * * * as a custodial parent." In re Welfare of Bergin, 299 Minn. 218, 218 N.W.2d 757, 758 (Minn. 1974). Thus, in reviewing the trial court's custody order, the first issue is whether the trial court clearly erred in finding that respondent had not abused C.H. The record requires a conclusion that the trial court's finding had sufficient evidentiary support.
C.H. was twice examined for physical signs of sexual abuse and neither exam revealed any physical symptoms of abuse. Nor did appellant report observing any physical signs of sexual abuse.
Wright County Social Services staff and Sheriff's Department officers conducted a joint investigation into appellant's allegations. C.H. was interviewed outside the presence of her parents, without their knowledge, by persons with experience in investigating sexual abuse. During this interview, C.H. made confusing and inconsistent statements on the subject of whether respondent had touched her inappropriately. At times, C.H. stated that appellant told her to say *459 that respondent and her brothers had been touching her inappropriately, and at other times she denied that appellant had told her to say these things. C.H. also stated that her grandparents and appellant had touched her inappropriately. The investigator's concluded that C.H. was confused on this issue and that sexual abuse could not be substantiated.
The trial court appointed an expert child sexual abuse evaluator, Dr. Sandra Hewitt, to conduct psychological evaluations of appellant, respondent, and their children. Dr. Hewitt concluded that there were no signs that C.H. had been sexually abused. Although C.H. would verbally indicate that respondent was "naughty," she could not provide any details or put the actions in context. C.H. did not indicate any sexual touching when presented with projective storytelling cards. Nor were her emotional reactions consistent with a child who had been sexually abused. She did not express any fear of respondent, either when she was alone with Dr. Hewitt or when respondent was physically present. C.H. also told Dr. Hewitt that appellant had told her to say that respondent was "naughty."
There was also testimony from Dr. Dorothy Edelson, who was appointed to supervise visitation between appellant and C.H. and act as C.H.'s therapist. Dr. Edelson testified that C.H. had not provided her with any information that would suggest that C.H. had been sexually abused nor had she observed any clinical symptoms of abuse.
There was no expert testimony affirming appellant's allegations and the evidence presented by appellant is not conclusive. Appellant testified that C.H. told her on several occasions that respondent was touching her inappropriately. But appellant claims C.H. first made these statements prior to the parties' separation, and she never reported her suspicions to anyone until after the divorce had been commenced and respondent indicated he would be seeking custody of the children.
Appellant and others testified that C.H. was visibly upset whenever she had to leave appellant and was reluctant to return to respondent. Appellant also reported that C.H. was acting immature and exhibiting age-inappropriate behavior. Dr. Hewitt acknowledged that C.H. exhibited certain emotional problems as described by appellant, but noted that C.H. also exhibited separation anxiety whenever she had to leave her father. Dr. Hewitt attributed C.H.'s emotional difficulties to the stress of the divorce and her conflicting loyalties to her parents.
Aside from appellant's testimony, there is no evidence that C.H. has ever spontaneously made statements to anyone that would suggest that respondent had sexually abused her. There was evidence that when questioned C.H. would make statements that respondent had sexually abused her. But there is a genuine question regarding the veracity and source of C.H.'s statements.
C.H. stated on more than one occasion that appellant had told her to say that respondent was mean and touched her inappropriately. C.H.'s brothers stated that appellant spent a great deal of time alone with C.H. behind closed doors during their visitation. C.H. was sitting on appellant's lap when she made her statements to appellant's cousin. A social worker at Minneapolis Children's Medical Center also interviewed C.H. in the presence of appellant. The social worker's report indicates that appellant was prompting and encouraging C.H. and that C.H. had received a lot of encouragement to talk prior to arriving at the clinic. The social worker also expressed concern over appellant's motives for bringing C.H. to the clinic. When C.H. was interviewed outside appellant's presence, for example, by the Wright County investigators and by Dr. Hewitt, her statements were ambiguous and inconsistent.
Dr. Hewitt concluded that this case exhibited signs "of a child whose statements had been misinterpreted * * * by a frightened and hyper vigilant parent" or, at worst, a child who had been actively coached. Dr. Hewitt also noted that C.H.'s emotional difficulties could make her susceptible to leading or suggestive questions and, if questioned by a parent, she would be more likely to provide an answer that she thinks would satisfy the parent, rather than a truthful response. Dr. Hewitt also expressed concern that appellant *460 continued to cling to her abuse allegations in the absence of any corroborating evidence and felt that this case was ripe for further allegations of abuse.
This is not a case where a parent's allegations of sexual abuse were ignored or dismissed without careful consideration. The record demonstrates that the trial court, together with other person's involved in this case, took appellant's allegations seriously and carefully investigated them to determine if there was any evidence of sexual abuse. In the end, the trial court could not find any credible evidence to support the allegations. Considering the record as a whole, including the expert testimony, and the opportunity of the trial court to judge credibility, we must affirm the trial court's findings that respondent had not sexually abused C.H.

B. Respondent's Record of Sexual Abuse
The second issue presented by appellant is whether it was an abuse of discretion for the trial court to place C.H. with respondent in light of his record of sexually abusing another child. The trial court found that respondent had sexually abused a niece ten years ago. We will not disturb this finding on appeal as it involved a question of credibility.[1] Minn.R.Civ.P. 52.01.
Initially, we observe that respondent's record of sexual abuse does not render clearly erroneous the trial court's finding that respondent did not abuse C.H. The experts acknowledged at trial that previous evidence of abuse was relevant and raised serious concerns about repeat behavior, but they also noted that not all abusers will repeat their behavior. The expert witnesses testified that they took respondent's previous conduct into account but still did not believe that respondent had sexually abused C.H.
Appellant elicited general expert testimony from Dr. Hewitt and other experts regarding the basis for a diagnosis of pedophilia and the general behavioral patterns of pedophiles. None of the experts applied their observations to respondent or diagnosed respondent as a pedophile. Appellant's experts had never met respondent and had not reviewed all of the documents relevant to the case. Dr. Hewitt concluded that the available information did not suggest pedophilia and did not warrant referring respondent for a formal diagnosis. Appellant apparently asks this court to apply the general testimony about pedophilia to respondent without the benefit of an expert opinion. Neither this court nor the trial court is competent or entitled to make that kind of independent determination.
On the ultimate custody issue in the case, appellant cites Simonson v. Simonson, 292 N.W.2d 12 (Minn.1980), arguing that it was an abuse of discretion to place C.H. with respondent in light of his record of sexual abuse. In Simonson, the trial court found that both parents were fit to have custody of their son; the only concern was the man with whom the mother was cohabiting. Id. at 13. This man had been convicted of six felonies, one or more of which were for carnal knowledge. Id. The man's first wife also charged him with molesting his own daughter and a niece, charges that were not denied. Id. The supreme court held that "under these circumstances" it was an abuse of discretion to place custody of the child with the mother as long as she was residing with this man. Id. There is no indication that the man had ever sexually abused the child; the supreme court relied solely on his previous misconduct.
We do not read Simonson to prohibit custodial care for every parent or caretaker with a record of sexually abusing another child, and we find the case at hand distinguishable from Simonson. Respondent's record of abuse involves one incident of abuse ten years ago, whereas Simonson involved a contemporaneous pattern of sexual misconduct, including felony convictions. Moreover, the trial court found that respondent participated in counselling after the incident with his niece, a fact which does not appear in Simonson. The trial court here had the benefit of expert testimony, which also does not appear *461 in Simonson. Respondent also has a longer history of contact with the child in question than appears in Simonson, yet there is no indication respondent has sexually abused C.H.
The lower court in Simonson indicated that both parents were equally qualified to serve as custodial parent but for this one concern. That is not the case here. Outside of respondent's record of sexual abuse, the trial court's findings on the other statutory factors support the court's ultimate determination that respondent is better suited to be C.H.'s custodial parent, and the findings raise serious concerns about placing C.H. with appellant.[2] The trial court had the obligation to balance respondent's record of sexually abusing another child 10 years earlier against the other factors indicating that respondent was the more appropriate custodial parent. Under the circumstances, it was not an abuse of discretion for the trial court to place custody of C.H. with respondent, notwithstanding his record of abuse.

II. LIEN ON HOMESTEAD
The trial court awarded respondent, as the custodial parent, occupancy of the parties' homestead and ordered an equitable lien against the property in favor of appellant to secure her interest. By notice of review, respondent argues that the trial court abused its discretion when it ordered him to satisfy appellant's lien prior to the emancipation of the youngest child.
The trial court has broad discretion in dividing marital property, including the homestead, and its decision will not be reversed on appeal absent an abuse of discretion. Rohling v. Rohling, 379 N.W.2d 519, 523 (Minn.1986). Respondent is correct that "Minnesota courts frequently have approved of awarding possession of the homestead to the custodial parent and postponing its sale until the children are emancipated." Goar v. Goar, 368 N.W.2d 348, 351 (Minn.App.1985) (citations omitted) (trial court decision ordering immediate sale of homestead remanded for further consideration because trial court did not consider impact of immediate sale on the children). But there is no case law suggesting that such an arrangement is appropriate in all cases or mandatory in any.
Here, the trial court did not order immediate sale of the homestead but rather allowed respondent 30 months from the date of the judgment and decree to satisfy the lien. The trial court made clear that it anticipated the lien would be satisfied by refinancing rather than sale and that refinancing would be less disruptive to the children than a sale. The property is unencumbered and respondent has presented no evidence that he will be unable to obtain a mortgage or home equity loan to satisfy the lien.
Moreover, appellant is in serious need of funds. Appellant has very few marketable skills and has not worked for a number of years. The trial court reserved maintenance until respondent became more financially stable. Appellant also received very little in the way of a property settlement. Respondent depleted a $4,000 savings account in anticipation of the divorce and the parties' only other major asset was the homestead.
The trial court originally ordered respondent to satisfy appellant's lien within 18 months but extended the period for another 12 months after respondent brought a motion for amended findings. On this record, the trial court's decision was carefully considered and did not constitute an abuse of discretion.

DECISION
The trial court's finding that respondent did not sexually abuse C.H. was not clearly erroneous. Respondent's record of abuse towards another child was a substantial factor to be considered by the trial court when making the custody decision, but the trial court acted within its discretion in assessing the child's best interests and placing her custody with respondent. There was no abuse of discretion in ordering respondent to satisfy appellant's lien on the homestead *462 within 30 months of the judgment and decree.
Affirmed.
NOTES
[*] Retired judge of the district court, serving as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.
[1] The trial court discounted the testimony of appellant's sisters that respondent had sexually abused them 20 years ago. This finding also involved a question of credibility and will not be disturbed on appeal.
[2] The trial court was so concerned about appellant's ability to serve as C.H.'s custodian that the court accepted the recommendation of the guardian ad litem and custody evaluator and only allowed appellant supervised visitation with C.H.