In re the Marriage of Sandra Lee.
HOLMBERG, petitioner,
Appellant,

v.

Ronald Gerald HOLMBERG, Respondent.

Denise M. KALIS–FULLER, n/k/a Denise
M. Kalis, petitioner, Respondent,

v.

Lee V. FULLER, Appellant.

In re the Marriage of Kristi Sue
CARLSON, petitioner,
Respondent,

v.

Steven Alan CARLSON, Appellant,
Dakota County, Respondent.

Nos. C7–97–926, C7–97–1512, C8–
97–1132 and C8–98–33.

Court of Appeals of Minnesota.

June 12, 1998.

See also, 529 N.W.2d 456.

818

Lawrence H. Crosby, St. Paul, for appellant Sandra Holmberg.

Alexandra B. Klass, A. Minni Alexander, Dorsey & Whitney, L.L.P., Minneapolis, for respondent Ronald Holmberg.

Richard Hermes, Buffalo, for respondent Holmberg children.

Wyman A. Nelson, Wright County Attorney, Terry D. Fraizer, Assistant Wright County Attorney, Buffalo, for respondent Wright County.

Hubert H. Humphrey III, Attorney General, Kim Buechel Mesun, Assistant Attorney General, intervenor respondent attorney general.

Lawrence H. Crosby, N., St. Paul, for appellant Lee Fuller.

Denise M. Kalis, St. Paul, respondent pro se.

Susan E. Gaertner, Ramsey County Attorney, Theresa Walton, Assistant Ramsey County Attorney, for respondent Ramsey County.

Elizabeth Anderson Holt, Holt and Anderson, Burnsville, for respondent Kristi Carlson.

James Backstrom, Dakota County Attorney, Tonya D. Freeman, Assistant County Attorney, for respondent Dakota County.

Mark A. Olson, Olson Law Office, Burnsville, for appellant Steven Carlson.

Hubert H. Humphrey III, Attorney General, Jin–Ho Chung, Assistant Attorney General, intervenor attorney general.

Considered and decided by TOUSSAINT, C.J., and HUSPENI, RANDALL, KLAPHAKE, WILLIS, SHUMAKER and MANSUR, J.[*]

## OPINION

KLAPHAKE, Judge.

These consolidated cases are considered by an expanded panel of judges from this court. Each appeal is from a post-judgment child support order issued by an administrative law judge (ALJ) and raises constitutional challenges to the administrative child support process governed by Minn.Stat. § 518.5511 (1996). We address the separation of powers issue and conclude that the administrative child support process constitutes an imper-

missible transfer of judicial power to the executive branch, in violation of the separation of powers required by Minn. Const. art. III, § 1. We therefore reverse each of the support orders and remand for consideration by the district court.

In *Holmberg v. Holmberg* (C7–97–926), appellant Sandra Holmberg challenges a district court's post-judgment order delaying her ability to collect on her homestead lien until the children are emancipated. Because the district court did not err in concluding the lien was in the nature of child support and can be modified, but failed to determine whether Ronald Holmberg made a good faith effort to pay the lien, we remand on this issue.

In *Kalis–Fuller v. Fuller* (C8–97–1132 & C9–98–33), appellant Lee Fuller requests that this court overrule *Marriage of Haynes*, 343 N.W.2d 679 (Minn.App.1984), and credit disabled child support obligors for social security benefits paid on behalf of children for whom they have a support obligation. We take the opportunity afforded by this expanded panel to overrule *Haynes*, and we remand for recalculation of Lee Fuller's support obligation.

In *Carlson v. Carlson* (C7–97–1512), appellant Steve Carlson challenges an ALJ's amended order denying his motion for reduced support. Because we conclude the administrative child support process is unconstitutional, we need not address Steve Carlson's non-constitutional claims, which he raises only in the alternative.

## FACTS[1]

In 1987, the legislature established a pilot project in Dakota County to address child and medical support issues and certain maintenance obligations in an administrative process if the county represented a party or was a party to the proceedings. 1987 Minn. Laws ch. 403, art. 3, § 80 (codified at Minn. Stat. § 518.551, subd. 10 (Supp.1987)). The legislature approved a restructured administrative child support process in 1994, and

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Any facts necessary to an understanding of the individual appeals are included later in this opinion in our analysis of those appeals.

expanded the process to all counties designated by the commissioner of human services to use the new contested hearing process. 1994 Minn. Laws ch. 630, art. 10, §§ 1–4 (codified at Minn.Stat. § 518.5511 (1994)). In 1995, the process was again expanded to include parentage orders when custody and visitation are uncontested. 1995 Minn. Laws ch. 257, art. 5, § 1. These appeals involve the administrative child support process as it existed prior to 1997.[2]

## ISSUES

I. Does the administrative child support process governed by Minn.Stat. § 518.5511 (1996) violate the separation of powers required by Minn. Const. art. III, § 1?

II. Did the district court err by modifying Sandra Holmberg's homestead lien?

III. Should a disabled child support obligor be credited for social security disability benefits paid on behalf of the child for whom the support obligation is owed?

## ANALYSIS

### I.

*A. Propriety of Addressing Constitutional Claims*

■ Appellants did not challenge the constitutionality of the administrative child support process during the administrative proceedings or in the district court. Generally, an appellate court will consider constitutional issues only if raised and litigated before the district court. *Egeland v. State*, 408 N.W.2d 848, 852 (Minn.1987). However, an administrative agency lacks subject matter jurisdiction to decide constitutional issues because those questions are within the exclusive province of the judicial branch. *See Neeland v. Clearwater Mem. Hosp.*, 257 N.W.2d 366, 368 (Minn.1977). Although precluded from raising their constitutional

claims in the administrative proceedings, appellants might have "commenc[ed] an action or [brought] a motion"[3] in district court to raise any "issues outside the jurisdiction of the administrative process." Minn.Stat. § 518.5511, subd. 1(b) (1996).

■ Dismissal of these constitutional claims would only delay the processing of child support cases and perpetuate uncertainty for parents and children throughout the state. Moreover, the separation of powers issue, in particular, would not necessarily benefit from development of a district court record or additional briefing. *See* Minn. R. Civ.App. P. 103.04 (appellate court may address any issue as justice requires); *In re Jury Panel for Dakota County*, 276 Minn. 503, 507, 150 N.W.2d 863, 866 (1967) (addressing issue not properly before court because "clear-cut[,]" "fully briefed and argued," presented on complete record, and "[n]o useful purpose would be served" by not addressing issue). Therefore, we will address the separation of powers issue.

*B. Merits of Separation of Powers Claim*

■ The powers of government are divided among the branches of the government, and no member of one branch is allowed the power of any other branch "except in the instances expressly provided" in the Minnesota Constitution. Minn. Const. art. III, § 1. The constitution gives district courts original jurisdiction in all "civil" cases, and dissolution proceedings are civil actions. Minn. Const. art. VI, § 3; *see Christenson v. Christenson*, 281 Minn. 507, 521–24, 162 N.W.2d 194, 203–04 (1968) (discovery rules and privilege against self-incrimination available in divorce action, as in any other civil action). The issue here is whether the statute governing the administrative child sup-

2. Although the 1997 legislature has further modified the administrative child support process, the rulings at issue here were made before August 1, 1997, the effective date for the 1997 amendments. *See* Minn.Stat. § 645.02 (1996) (if no effective date specified, statutes effective August 1 of year enacted); 1997 Minn. Laws ch. 245, art. 1, §§ 18–20 (no effective date specified for amendments to § 518.5511). Similarly, while the ruling in *Carlson* was made after other amendments became effective on July 1, 1997,

these amendments did not substantively impact that decision. *See* 1997 Minn. Laws ch. 203, art. 6, § 93 (stating July 1, 1997, effective date for amendments contained in chapter 203). Thus, in this opinion, we focus on the administrative child support process as it existed before the 1997 amendments.

3. However, the exact nature of the action or motion by which constitutional challenges might be raised is unclear.

port process constitutes an impermissible invasion of the original jurisdiction of the district courts. Although a statute is presumed constitutional, we will declare it unconstitutional "when absolutely necessary." *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 337 (Minn.1995).

■ By adopting Minn.Stat. § 518.5511 in 1994, the Minnesota legislature responded to the large number of children receiving child support services and federal developments encouraging efficient establishments and collection of child support obligations. *See* 42 U.S.C. (Supp. V 1983) (addressing establishment and collection of child support); 45 C.F.R. § 303.101 (1993) (same). To address these concerns, the legislature delegated to non-judge members of the executive branch broad authority over matters traditionally determined by the judicial branch.[4]

Under this statute, when the public authority is a party or is providing services to a party, the administrative child support process is the forum for actions "to obtain, modify, and enforce" orders involving child and medical support, or modification of spousal maintenance if combined with a child support proceeding. Minn.Stat. § 518.5511, subd. 1(a), (b). A county may unilaterally expand the process to include contempt motions and actions to establish parentage. *Id.*, subd. 1(b). Although the statute presumes that all counties will participate, if the commissioner of human services does not "designate" a county for the process, contested hearings "shall be conducted in district court." *Id.*, subd. 4. Thus, individual counties and the commissioner of human services effectively determine which litigants will have access to the district courts and which must pursue administrative remedies.

Once the administrative child support process is triggered, broad judicial authority is granted to the ALJs determining these matters. In particular, the ALJs have "all powers, duties, and responsibilities conferred on judges of district court to obtain and enforce child and medical support and parentage and maintenance obligations," including the pow-

er to issue subpoenas, to conduct proceedings according to administrative rules (as well as applying the rules of family court and civil procedure), and to conduct administrative proceedings in available courtrooms. *Id.*, subds. 1(e), 4(d), 4(e), 6. Perhaps most importantly, the ALJs make findings of fact, conclusions of law, and "final" decisions, which are appealable to this court "in the same manner as a decision of the district court." *Id.*, subds. 4(f), (h). Because many support orders and all maintenance orders originate in district court, the administrative child support process thus places the ALJs in the constitutionally untenable position of reviewing and modifying judicial decisions. *See In re Lord*, 255 Minn. 370, 372, 97 N.W.2d 287, 289 (1959) ("the executive shall have no power to interfere with the courts in the performance of judicial functions").

Our supreme court has reviewed challenges to the constitutionality of other legislative initiatives involving the administrative exercise of quasi-judicial powers, and their opinions guide our analysis here. In *Breimhorst v. Beckman*, 227 Minn. 409, 432–33, 35 N.W.2d 719, 733–34 (1949), the court held that the workers' compensation system did not violate separation of powers. The court explained that the vesting of quasi-judicial powers in an agency was not unconstitutional

> as long as the [agency's decisions] are not only subject to review by certiorari, but lack judicial finality in not being enforceable by execution or other process in the absence of a binding judgment entered thereon by a duly established court.

*Id.* at 433, 35 N.W.2d at 734. The supreme court later characterized these requirements as marking "the outside limit of allowable quasi-judicial power in Minnesota." *Wulff v. Tax Ct. of Appeals*, 288 N.W.2d 221, 223 (Minn.1979).

Decisions made in the administrative child support process are not subject to review by certiorari, but are appealable "in the same manner as a decision of the district court." Minn.Stat. § 518.5511, subd. 4(h). We there-

---

4. Federal regulations have since changed and restrictions on judge involvement in child support collection programs prompted by federal law no longer exist. *Compare* 45 C.F.R. § 303.101(a) (1993) (expedited process includes presiding officer who is not judge) *and* 45 C.F.R. § 303.101(a) (1995) (defining expedited process without precluding involvement of judges).

fore apply the same standards of review on appeal to these ALJ decisions that we apply to district court decisions. *Lee v. Lee,* 459 N.W.2d 365, 368–69 (Minn.App.1990), *review denied* (Minn. Oct. 18, 1990). Further, these ALJ decisions are enforceable without any intervening ruling or binding judgment of a district court. Thus, the administrative child support process goes beyond the "outside limits of allowable quasi-judicial power" set forth in *Breimhorst.*

The finality and appealability aspects of decisions made in the administrative child support process distinguish them from decisions made by a typical ALJ, which are usually reviewed within the relevant agency before judicial review is sought. Thus, the deference traditionally afforded an agency decision due to its expertise and required by separation of powers is not afforded ALJ decisions in the administrative child support process. *See Meath v. Harmful Substance Compensation Bd.,* 550 N.W.2d 275, 281 n. 2 (Minn.1996) (Anderson, J. concurring specially) (noting "limited and deferential review" provided by certiorari "ensures that the judiciary does not encroach" on powers of other branches of government).

These decisions are also unlike those of traditional family-court referees, whose recommended decisions are initially reviewed by the district court.[5] *See Peterson v. Peterson,* 308 Minn. 297, 304, 242 N.W.2d 88, 93 (1976) (district court has "full authority" to adopt referee's order "in whole or in part"). By shifting the initial burden of judicial review to this court, the administrative child support process encroaches upon the original jurisdiction of the district courts.

In *Wulff,* 288 N.W.2d at 225, which upheld as constitutional the creation of the tax court, the supreme court expressed reluctance "to approve * * * a legislative scheme" that allowed agency "decisions, upon filing, [to] au-

tomatically become orders of the court." Nevertheless, the court concluded that there were "additional factors" that gave it "more latitude" to approve the creation of the tax court, despite the apparent violation of the limits established in *Breimhorst. Wulff,* 288 N.W.2d at 224. Those "additional factors" included the peculiarly legislative nature of taxation, the discretionary nature of the district court's ability to refer cases to that court, the preservation of taxpayers' "option to file in district court," and the "ultimate check on administrative power in the form of review" by appeal to the supreme court. *Id.* at 224–25. The court warned, however, that its decision should not be read "to imply * * * that any and all legislative delegation of judicial power subject to judicial review is constitutionally permissible." *Id.* at 225.

By contrast, the area of family law requires a district court to exercise its inherent power to grant *equitable* relief. *Johnston v. Johnston,* 280 Minn. 81, 86, 158 N.W.2d 249, 254 (1968); *see also In re Welfare of R.L.W.,* 309 Minn. 489, 491, 245 N.W.2d 204, 205 (1976) (contempt is part of court's inherent power, independent of statute). Because the administrative child support process limits certain parties' access to district court, the district court is deprived of its inherent power to do equity in those cases. The administrative child support process lacks the "judicial checks" and "additional factors" identified in *Wulff,* which characterized a taxpayer's ability to elect a judicial determination as "crucial" and "perhaps the saving feature" of the statute. *Wulff,* 288 N.W.2d at 225.

We also recognize that workers' compensation and taxation are unique and require extensive, constitutionally valid, legislative supervision, but for different reasons. "Taxation is primarily a legislative function"

---

5. Under a pilot project, some decisions made by referees in the Second Judicial District are not being reviewed by district court judges. We note, however, that this pilot project is confined to a single district, is of limited duration, and is a joint effort of all three branches of government (authorized by the legislature, approved by the governor, and implemented by the supreme court). *See* 1996 Minn. Laws ch. 365, § 2 (authorizing Second Judicial District pilot project and setting expiration date); *In re Second Judi-*

*cial Dist. Combined Jurisdiction Pilot Project,* No. CX–89–1863 (Minn. Apr. 10, 1996) (implementing pilot project). The advisability of foregoing review in the district court remains to be seen. *See Kahn v. Tronnier,* 547 N.W.2d 425, 428 (Minn.App.1996) (district court review of referee's order not prerequisite to appeal, but analogous to motion for amended findings or new trial and affects scope of review on appeal), *review denied* (Minn. July 10, 1996).

and court involvement is a matter of convenience. *State ex rel. Cent. Hanover Bank & Trust Co. v. Erickson,* 212 Minn. 218, 225, 3 N.W.2d 231, 235 (1942). Thus, the legislature could delegate this non-judicial function to an agency without encroaching upon the judicial branch's authority. The workers' compensation system, on the other hand, is an integrated, comprehensive system created in response to increased industrialization and rising disability rates. *Breimhorst,* 227 Minn. at 430–31, 35 N.W.2d at 733. With few exceptions, it covers "all employers and employees," and requires both employers and employees to give up certain rights "to assure the quick and efficient delivery" of benefits to injured employees "at a reasonable cost to the employers." Minn. Stat. §§ 176.001, .021, subd. 1 (1996); *see Boedingheimer v. Lake Country Transp.,* 485 N.W.2d 917, 923 (Minn.1992) (noting uniqueness of workers' compensation system, including legislative oversight). Thus, although workers' compensation does not involve a peculiarly legislative function like taxation, as an integrated system "mandated" to meet a series of "important social issues," the workers' compensation system was, and is, unique in its own way, justifying the delegation of judicial power to an agency. *Wulff,* 288 N.W.2d at 223.

The administrative child support process does not serve a peculiarly legislative function and it is not unique. Instead, the administrative child support process selectively usurps the district court's inherent equitable powers. And while it can be argued that the process was intended to meet certain social needs, it is *not* an integrated, comprehensive approach for deciding all child support issues in all cases. Rather, the administrative child support process applies only to limited types of cases where public monies are involved and only to certain issues in those cases. Parties may be involved in concurrent proceedings in the district court on property or custody issues outside the scope of the administrative child support process—which is precisely what occurred in *Holmberg*—and child support proceedings before an ALJ. The introduction of additional decisionmak-

ers, the concomitant risk that decisions may be inconsistent or not easily reconciled, and the inefficiency of requiring consideration of overlapping or identical evidence and multiple appeals stand in contrast to the integrated and comprehensive nature of the workers' compensation system.[6]

Other courts on both the state and federal level have similarly ruled that certain transfers of judicial authority to administrative agencies violated separation of powers under either state or federal constitutions. While each state's constitution and the federal constitution differ somewhat from the Minnesota constitution, these foreign decisions reinforce the importance of a careful examination of any delegation of judicial functions. *See, e.g., Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (appointment of bankruptcy judges violated Constitution where only oversight was by way of appeal); *A.L.W. v. J.H.W.,* 416 A.2d 708 (Del.1980) (to avoid constitutional infirmity, statute creating family court masters construed to require judge approval of master decisions); *State, ex rel. Smith v. Starke Cir. Ct.,* 275 Ind. 483, 417 N.E.2d 1115 (1981) (invalidating legislatively created commission with jurisdiction over probate, civil, and criminal cases); *Drennen v. Drennen,* 229 Neb. 204, 426 N.W.2d 252 (1988) (state statute drafted in response to same child support laws that prompted Minnesota statute, deprived district court of original jurisdiction, and violated state constitution).

Finally, we reject the dissent's claim that *Mack v. City of Minneapolis,* 333 N.W.2d 744, 752–53 (Minn.1983), changed the outside limit of quasi-judicial power in Minnesota. While the dissent reads *Mack* as reducing the test for separation of powers to a simple question of whether appellate judicial review is provided, we reject that analysis. That view would permit the legislature to transfer any traditional judicial function, wholesale, to autonomous ALJs who are members of the executive branch, without requiring any agency or district court review, so long as the

---

**6.** We also note that the symbiotic relationship between current funding of ALJs and their duty to collect back child support may create a con- flict of interest which may be the type of tyranny that the separation of power doctrine is designed to check.

"final" ALJ decisions are appealable to this court. Moreover, *Mack*, which involved limitations on attorney fees in workers' compensation cases and allowed the agency to initially set the amount of attorney fees,[7] relied heavily on the "nearly uniform practice throughout the country of assigning responsibility for attorney fees to compensation commissions." *Id.* at 753. "Given this uniform approach, [the supreme court] decline[d] to invoke the separation of powers as a basis for invalidating the statute." *Id.*

We recognize that in the area of family law the volume of cases is large, many children receive child support services from a public authority, and the current administrative child support process lessens the burden on limited district court resources. We must conclude, however, that the administrative support system represents an improper attempt to transfer broad judicial power to the executive branch. This attempted transfer violates the rule announced in *Breimhorst* and the limits of our state constitution, and it does not fit within the exceptions carved out in *Wulff* or *Breimhorst*. We therefore hold the administrative child support process governed by Minn.Stat. § 518.5511 unconstitutional because it violates the separation of powers required by the Minnesota Constitution.

Appellants also raise due process and equal protection claims, based on the selective nature of the administrative child support process. The process denies litigants access to the district court while limiting the use of the administrative process, all based on whether public monies are involved, counties make certain elections, or the commissioner of human services designates a county for the administrative process. Conditioning litigants' access to a constitutional court based on financial considerations and on independent decisions made in the executive branch or individual counties is troubling, both from the perspective of equal protection and fundamental fairness, and because of the precedent it sets. Because the factual and evidentiary record before this court is not fully developed on the due process and equal protection claims, we decline to rule on these issues.

■ Finally, our ruling that the administrative child support process is unconstitutional is prospective only, and does not affect the validity of existing support obligations, which remain in effect unless and until a court grants relief. *See State v. Olsen*, 258 N.W.2d 898, 907 n. 15 (Minn.1977) (criteria for determining retroactivity or prospectivity include "reliance" and "effect on the administration of justice"). Our decision will not be final until the period for a petition for review to the supreme court has passed or any proceedings therein have been resolved. *See Hoyt Inv. Co. v. Bloomington Commerce & Trade Ctr. Assocs.*, 418 N.W.2d 173, 176 (Minn.1988) (this court's decision final when supreme court denied petition for further review); *see also* Minn. R. Civ.App. P. 117, subd. 1 (party has 30 days to seek review of this court's decision in supreme court); Minn. R. Civ.App. P. 136.02 (entry of judgment on this court's decision stayed pending petition for review). Thus, persons seeking relief from existing support orders are not discharged of their obligation to satisfy the statutory criteria for modification.

## II.

### *Holmberg v. Holmberg*

■ The amended judgment dissolving the marriage of Ronald and Sandra Holmberg awarded Ronald Holmberg the marital homestead and custody of the children. It awarded Sandra Holmberg a lien on the home, to

---

7. The power to regulate the bar, and hence attorney fees, "was intended to be vested *exclusively in the supreme court.*" *Sharood v. Hatfield*, 296 Minn. 416, 425, 210 N.W.2d 275, 280 (1973) (emphasis added) (citation omitted). Because the supreme court retains the power to review attorney fee decisions, the statutory provision limiting attorney fees in workers' compensation proceedings does not divest the supreme court of its authority on the subject; it simply gives the supreme court the opportunity to defer to the Workers' Compensation Court of Appeals. Thus, *Mack* is consistent with *Wulff* because a statute that does not require a court to defer to an agency, but merely gives a court an opportunity to relinquish its authority to the agency, is not a violation of the separation of powers. *See Wulff*, 288 N.W.2d at 224–25 (statute allowing, but not requiring, district court to refer cases to tax court did not violate separation of powers because it "takes nothing from the district court that it does not voluntarily relinquish").

be paid by Ronald Holmberg in 30 months. It also set Sandra Holmberg's support obligation and Ronald Holmberg's maintenance obligation. On appeal, we affirmed the judgment. *Holmberg v. Holmberg,* 529 N.W.2d 456 (Minn.App.1995), *review denied* (Minn. May 31, 1995).

Later, Sandra Holmberg signed a confession of judgment in favor of her attorney. When Ronald Holmberg failed to pay the lien, Sandra Holmberg sought to compel sale of the home and a division of proceeds. Ronald Holmberg asked that payment of the lien be postponed until the children were emancipated. In March 1997, the district court took those issues, as well as support issues, under advisement.

In April 1997, the district court ruled that the lien was in the nature of child support and could be modified to defer Ronald Holmberg's obligation to pay it until the children were emancipated. The accompanying memorandum noted that Sandra Holmberg was not currently paying support but stated that it was likely the court would require security for any support obligation because of her limited income and the outstanding judgment against her for attorney fees. A week later, the ALJ required Sandra Holmberg to pay prospective support and to reimburse the county for past support.

 Sandra Holmberg argues that her homestead lien is not subject to modification because it is part of the parties' property division.[8] Contrary to Sandra Holmberg's claims, our prior opinion reviewing the judgment contains no such ruling. *See Holmberg,* 529 N.W.2d at 461. As the dissolution judgment did not indicate whether the lien was a property interest, neither law of the case nor res judicata[9] precluded the district court from addressing the nature of the lien. *See In re Welfare of M.D.O.,* 462 N.W.2d 370, 375 (Minn.1990) (law of the case applies to issues "decided in earlier stages of the same

case"); *Demers v. City of Minneapolis,* 486 N.W.2d 828, 830 (Minn.App.1992) (res judicata requires prior ruling on merits of an issue).

 Sandra Holmberg claims the district court erred in treating her lien as child support rather than as property. The dissolution judgment is ambiguous on this point and could be read either way. *See Head v. Metropolitan Life Ins. Co.,* 449 N.W.2d 449, 452 (Minn.App.1989) (whether dissolution judgment ambiguous is legal question), *review denied* (Minn. Feb. 21, 1990). Because the judge interpreting the ambiguous judgment is the same judge who issued it, this court gives "great weight" to the judge's construction of the judgment. *Mikoda v. Mikoda,* 413 N.W.2d 238, 242 (Minn.App.1987), *review denied* (Minn. Dec. 22, 1987). In this case, the district court did not err by ruling that the lien was in the nature of child support and subject it to modification. *See Trondson v. Janikula,* 458 N.W.2d 679, 682 (Minn.1990) (district court's resolution of ambiguity in contract treated as finding of fact); Minn. R. Civ. P. 52.01 (findings of fact not set aside unless clearly erroneous); *see also Plonske v. Plonske,* 473 N.W.2d 911, 913 (Minn.App. 1991) (allowing modification of lien payment period where lien in nature of child support).

The district court extended the lien, stating that if Sandra Holmberg were paying support, she "would likely" be ordered to provide security for that obligation. The district court also sought to ensure that Sandra Holmberg's interest in the homestead would remain accessible to the children, rather than being subject to execution by her attorney. Although these considerations are proper, the court failed to recognize that (1) the dissolution judgment was based on an assumption that Ronald Holmberg would have "little trouble" refinancing the homestead to pay Sandra Holmberg's lien; (2) the

---

8. Generally, divisions of real and personal property are final. Minn.Stat. § 518.64, subd. 2(d) (1996). But the court, after considering the custody and circumstances of the children, may award the right of occupancy of the homestead in a dissolution or modification proceeding. Minn.Stat. § 518.63 (1996).

9. Sandra Holmberg also argued that "judicial preclusion" precluded any modification of the

terms for payment of her lien. But she neither cites authority addressing "judicial preclusion" nor defines the term. *Schoepke v. Alexander Smith & Sons Carpet Co.,* 290 Minn. 518, 519, 187 N.W.2d 133, 135 (1971) (assignment of error based on "mere assertion" and not supported by argument or authority in appellant's brief is waived unless error is obvious).

September 1996 order stated that Ronald Holmberg "waited until the last possible moment to attempt to satisfy [the] lien"; and (3) the April 1997 order contained no findings on whether Ronald Holmberg made good faith attempts to pay off the lien.

Absent a true inability to pay off Sandra Holmberg's lien or changed circumstances rendering Ronald Holmberg's duty to pay unreasonable and unfair, the duration of Sandra Holmberg's lien may not be altered, even though it is in the nature of child support. *See* Minn.Stat. § 518.64, subd. 2(a) (support may be modified upon showing of substantially changed circumstances rendering existing award unreasonable and unfair); *Gorz v. Gorz,* 552 N.W.2d 566, 569 (Minn. App.1996) (moving party has burden to show changed circumstances); *cf. Marriage of Hecker,* 568 N.W.2d 705, 709 (Minn.1997) (frustration of expectations on which judgment is based can constitute substantial change in circumstances justifying maintenance modification). We remand for the district court to determine whether Ronald Holmberg, in good faith, lacked the ability to repay the lien and to make any necessary adjustments to its order based on that determination.

### III.

*Kalis–Fuller v. Fuller*

The judgment dissolving the marriage of Denise Kalis and Lee Fuller awarded Denise Kalis custody and ordered Lee Fuller to pay support. Later, Lee Fuller was injured and Denise Kalis applied for AFDC. Lee Fuller and the parties' child eventually received social security disability benefits.

In January 1997, Lee Fuller sought administrative review of his support obligation, arguing that requiring him to pay support from his disability benefits in addition to the amount the child was receiving in dependent benefits was unfair. Lee Fuller's request was denied and he formally moved to reduce child support. An ALJ treated Lee Fuller's

disability benefits as income and set his prospective support obligation at the guidelines amount. The ALJ ordered Lee Fuller to pay an additional amount toward support arrearages.

Lee Fuller claims that social security disability payments paid on behalf of a child for whom the noncustodial parent has a duty of support should be credited against the noncustodial parent's support obligation.[10] The payment of social security benefits from the account of a support-obligor parent "does not constitute payments from that parent." *Marriage of Haynes,* 343 N.W.2d 679, 682 (Minn.App.1984). While *Haynes* involved retirement benefits, its rationale has been applied to social security disability benefits. *E.g., Green v. Green,* 402 N.W.2d 248, 250 n. 2 (Minn.App.1987). We take this opportunity to re-examine *Haynes.*

*Haynes* was a case of first impression when decided in 1984. In concluding that payment of social security benefits from a support obligor's account did not constitute payment from the obligor, this court stressed that a support obligor lacks a property interest in the funds paid to dependent minors. *Haynes,* 343 N.W.2d at 681–82. As support for our position, we cited a Missouri case that has since been overruled. *See Craver v. Craver,* 649 S.W.2d 440, 444 (Mo.1983), *overruled by Weaks v. Weaks,* 821 S.W.2d 503, 506–07 (Mo.1991) (because "the child receives the benefit payments, the issue of the [obligor's] property right is irrelevant").

Where an obligor such as Lee Fuller, whose sole income is from disability benefits, is denied a credit against his support obligation, he must pay support from those benefits. Because his child already receives similar benefits as a disability dependent, Fuller receives fewer benefits than were intended while his child receives more. *See Marriage of Henry,* 156 Ill.2d 541, 190 Ill.Dec. 773, 622 N.E.2d 803, 809 (1993) ("the source and the

---

10. "Child support" is "an award * * * for the care, support and education of any child of the marriage or of the parties to the proceeding." Minn.Stat. § 518.54, subd. 4(1) (1996). Social security benefits paid on behalf of the child of a disabled support obligor have a similar purpose. *See Henry v. Henry,* 156 Ill.2d 541, 190 Ill.Dec. 773, 779, 622 N.E.2d 803, 809 (1993) ("[s]ocial

security dependent disability benefits replace support the child loses upon the disability of the wage earner responsible for the child's support"); *Potts v. Potts,* 240 N.W.2d 680, 682 (Iowa 1976) ("primary purpose" of disability benefits paid for children due to obligor's disability "is to meet the current needs of the dependents").

purpose of social security dependent benefits are identical to the sources and purpose of child support"). A majority of jurisdictions now recognize that such a result would be inequitable and allow a credit against a support obligation for benefits paid on behalf of a child. *See Hawkins v. Peterson*, 474 N.W.2d 90, 93 (S.D.1991) ("[u]nder the majority rule, child support may be offset by social security dependent benefits during the period in which the benefits are received"); *see also Henry*, 190 Ill.Dec. 773, 622 N.E.2d at 806–07 (same); *Newman v. Newman*, 451 N.W.2d 843, 844 (Iowa 1990) (same); *Frens v. Frens*, 191 Mich.App. 654, 478 N.W.2d 750, 751 (1991) (same); *Brewer v. Brewer*, 244 Neb. 731, 509 N.W.2d 10, 12 (1993) (same).

 We overrule the relevant portions of *Haynes* and its progeny because (1) child support and social security benefits paid on behalf of a child due to a support obligor's disability have almost identical purposes; (2) *Haynes* is at odds with the majority rule that has now emerged; and (3) a case critical to our ruling in *Haynes* has been overruled. On remand, the district court shall give Lee Fuller an appropriate credit against his prospective support obligation and arrearages for benefits paid on behalf of the child. If the credit exceeds Fuller's support obligation, he is not entitled to recover the difference from the child or the custodial parent. *See Newman*, 451 N.W.2d at 844 ("[t]he receipt of excess government benefits over the monthly child support obligation is equitably deemed a gratuity to the children").

## IV.

### *Carlson v. Carlson*

The 1994 judgment dissolving the Carlson marriage awarded Kristi Carlson custody, support, and maintenance. In March 1996, the district court denied Steve Carlson's motion to reduce his obligations. In April 1997, an ALJ denied a second motion by Steve Carlson to reduce his obligations, finding Steve Carlson had not shown a substantial change in circumstances since the district

court denied modification in March 1996. Steve Carlson sought amended findings, arguing the ALJ should evaluate the claim of changed circumstances by looking to the 1994 judgment setting support rather than the 1996 denial of modification. In an amended order denying modification, the ALJ did so, but altered other findings in an apparent attempt to reach the same conclusion she had originally reached regarding Steve Carlson's claim of changed circumstances.[11]

On appeal, Steve Carlson challenged the constitutionality of the administrative child support process and raised non-constitutional claims regarding the propriety of the ALJ's amended findings only in the alternative. Due to our ruling on the constitutional issue, we need not address his other claims.

## DECISION

The administrative child support process created by Minn.Stat. § 518.5511 (1996) is unconstitutional because it violates the separation of powers required by Minn. Const. art. III, § 1. We reverse the support orders and remand for consideration by the district court of the child support issues in each of the consolidated cases. In *Holmberg* (C7–97–926), the district court shall also determine whether Ronald Holmberg, in good faith, lacked the ability to pay the homestead lien. In *Fuller* (C8–97–1132 & C9–98–33), the district court shall also calculate the amount to be credited to Lee Fuller's prospective support obligation and arrearages as a result of the child's receipt of social security benefits.

**Affirmed in part, reversed in part, and remanded.**

SHUMAKER, Judge (concurring in part, dissenting in part).

I concur in the majority's decisions on all issues in these consolidated appeals except its determination that the administrative child support process established by Minn.

---

11. In the March 20, 1997 order, the ALJ found Steve Carlson "verifi[ed]" his financial information and found it "reasonable" to make specific findings of his total monthly income, net monthly income, and reasonable monthly expenses. In a July 3, 1997 amended order, the same ALJ found it "difficult to ascertain" Steve Carlson's income and struck the findings of his total and net monthly income made in the March 20, 1997 order. This appears to be an exercise of the ALJ's will rather than her judgment and were we to reach this issue, we would reverse.

Stat. § 518.5511, subd. 1 (1996), is unconstitutional. As to that holding, I respectfully dissent. In my view, the challengers have failed to prove beyond a reasonable doubt that the process is unconstitutional. Upon a review of the relevant cases after *Breimhorst v. Beckman*, 227 Minn. 409, 35 N.W.2d 719 (1949), and similar legislative transfers of powers to administrative entities such as the workers' compensation division, I conclude that section 518.5511 does not violate the separation of powers doctrine.

Any analysis must begin with an acknowledgment that Minn.Stat. § 518.5511 is presumed to be constitutional. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993). This presumption can be overcome only by proving beyond a reasonable doubt that the statute is unconstitutional. *Id.* This is the weightiest burden of proof in the Anglo–American system of law. Since we are dealing with a purely legal question, the challengers' burden is to prove beyond any reasonable doubt that there is no principled application of legal precedent that will sustain the statute. I believe that the challengers have failed to carry their burden and that when we subject the statute to the *Breimhorst* test, as that test is currently applied, the statute satisfies the separation of powers mandate.

Preliminarily, it will be helpful to explore the general concept of "separation of powers" and the legal principles inherent in the concept. The Minnesota Constitution mandates that the powers of the three branches of government be exercised separately. Minn. Const. art. III, § 1. The purpose of the separation is to provide "checks and balances critical to our notion of democracy." *Wulff v. Tax Court of Appeals*, 288 N.W.2d 221, 223 (Minn.1979). The unfettered concentration of a particular power in one branch of government to the exclusion of the other branches is abhorrent to our democratic system, for, according to Locke and Montesquieu, "tyranny would be the natural and probable result." *Id.* at 222–23.

Logically then, the powers of the three branches may be shared in some limited way, and one branch must have the ability to "check" the exercise of powers by the other branches. This "checking" requirement, formulated as the separation of powers doctrine, "has never been an absolute division of governmental functions in this country, nor was such even intended." *Id.* at 223 (footnote omitted). Moreover, there has never been an all-inclusive definition of "judicial power":

> "What is judicial power cannot be brought within the ring-fence of a definition. It is undoubtedly power to hear and determine; but this is not peculiar to the judicial office. Many of the acts of administrative and executive officers involve the exercise of the same power." * * * [M]any boards hear and determine questions affecting private as well as public rights, * * *. "The authority to ascertain facts and apply the law to the facts when ascertained pertains as well to other departments of government as to the judiciary."

*Breimhorst*, 227 Minn. at 432–33, 35 N.W.2d 719, 734 (1949), (quoting *State ex rel. Yaple v. Creamer*, 85 Ohio St. 349, 97 N.E. 602, 607 (1912)). "Courts have often validated the exercise of power by administrative agencies by characterizing it as 'quasi-judicial.'" *Wulff*, 288 N.W.2d at 223.

Courts do not interpret and apply the separation of powers doctrine strictly. *Id.* Rather, they employ the "checking" approach, always inquiring as to whether the power under scrutiny is so exclusively concentrated in one branch that tyranny, at least as to that power, is a genuine risk. *Id.* at 222–23. Thus, courts have permitted

> a delegation of powers to an agency so long as it was accompanied by adequate standards to act as a check on agency activity. By so limiting the powers of agencies, separation of powers is to some extent maintained.

*Id.* at 223. *Wulff* recognized that many administrative agencies exercise the powers of all three branches of government and acknowledged that "a strict interpretation of the separation of powers doctrine would make the existence and functioning of such agencies nearly impossible." *Id.*

The majority relies on *Breimhorst* and *Wulff* in declaring Minn.Stat. § 518.5511 violative of the separation of powers doctrine. *Breimhorst* held that the quasi-judicial functions of an administrative agency do not violate the separation of powers if (1) the agen-

cy's decisions lack judicial finality because no judgment can be entered thereon without intervention by a "duly established court;" and (2) judicial appellate review is available. 227 Minn. at 433, 35 N.W.2d at 734. *Wulff* provided no new rule but only said: "We believe that the criteria set out in *Breimhorst* mark the outside limit of allowable quasi-judicial power in Minnesota." *Wulff*, 288 N.W.2d at 223.

Although *Breimhorst* and *Wulff* are precedential authorities, I believe that the more recent decision in *Mack v. City of Minneapolis*, 333 N.W.2d 744, 753 (Minn.1983), which incorporates only the second criterion and the reasoning of *Breimhorst*, provides the current, correct test for determining whether quasi-judicial administrative functions violate the separation of powers doctrine.

*Breimhorst* involved a constitutional challenge to the Workers' Compensation Act and system. A woman suffered a disfiguring injury on her job. *Breimhorst*, 227 Minn. at 414, 35 N.W.2d at 724. She received workers' compensation benefits but she brought a common law tort action against her employer for damages that were not compensable under the act. *Id.* The supreme court ruled that the tort action was not available because the Workers' Compensation Act was compulsory and provided the complete and exclusive remedy against the employer. *Id.* at 429, 35 N.W.2d at 732. Neither the compulsory nature of the act nor the abrogation of established common law rights to tort damages and jury trial constituted a violation of the separation of powers doctrine. *Id.* at 433–36, 35 N.W.2d at 734–36. In sum, the 1949 *Breimhorst* court held that the Workers' Compensation Act was a proper exercise of the state's police power, was an adequate remedy for employee injuries, and was subject to both district and appellate court "checks" on the exercise of the power.

In reaching its decision, *Breimhorst* recognized that the fluctuating needs and demands of a governed society can be met only if courts give deference to the legislature in the exercise of police power:

> In the exercise of this power, which is as flexible and adaptable as the vital needs of our changing society, the state acts as the conservator of the public welfare. * * * A wide discretion is vested in the legislature in determining when a public welfare need exists and in the selection of an appropriate remedy.

*Id.* at 430, 35 N.W.2d at 732–33. The United States Supreme Court recognized that the public welfare interest underlying the workers' compensation system included the "concern with the continued life and earning power of the individual" so as to prevent "pauperism, with its concomitants of vice and crime." *New York Cent. R.R. Co. v. White*, 243 U.S. 188, 207, 37 S.Ct. 247, 254, 61 L.Ed. 667 (1917).

Like the Workers' Compensation Act, the administrative child support process reflects the legislature's exercise of police power in response to a public welfare concern. The supreme court has recognized the important public policies that affect legislative and judicial child support decisions. Regarding the recoupment of past child support, the court noted that there is a "strong state policy of assuring that children have the adequate and timely economic support of their parents," while simultaneously limiting "the unnecessary drain of scarce social service and judicial resources." *Schaefer v. Weber*, 567 N.W.2d 29, 33 (Minn.1997). Additionally, like the Workers' Compensation Act, which abrogated common law rights and remedies and preempted the judicial system of redress for employee injuries, Minn.Stat. § 518.5511 is part of a system that is entirely legislative in jurisdiction and power. *See, e.g. Melamed v. Melamed*, 286 N.W.2d 716, 717 (Minn. 1979) ("a trial court's authority in divorce proceedings is strictly limited to that provided by statute"); *Kiesow v. Kiesow*, 270 Minn. 374, 379, 133 N.W.2d 652, 657 (1965) ("[d]ivorce jurisdiction is statutory and the district court has no power not delegated to it by statute.")

For purposes of a separation of powers analysis, it is difficult to find legally meaningful differences between the workers' compensation process and the administrative child support process. Both are administrative systems under the executive branch of government and both operate predominantly in a quasi-judicial capacity. It might be noted in passing that the workers' compensation sys-

tem reflects a total transfer of plenary judicial power over a firmly-rooted, common law cause of action, while the child support process in question represents a comparatively minor delegation of judicial power over a limited class of family law proceedings. *See* Minn.Stat. § 518.5511, subd. 1(b) (1996) (*only when the public authority is involved is the use of the administrative process for child support and maintenance required*); *see also* Minn.Stat. § 518.5511, subd. 4(b) (1996) (recognizing the limited power of the ALJ; "[a]ny stipulation that involves a finding of contempt and a jail sentence * * * shall require the review and signature of a district court judge.")

Ostensibly, the majority's principal constitutional concern with Minn.Stat. § 518.5511 is the absence of district court intervention, right of approval or disapproval, or other oversight of the administrative decision. The first criterion in the *Breimhorst* test requires such district court involvement; and, at the time of the *Breimhorst* decision in 1949, orders from the industrial commission were in the nature of referees' recommendations which could be reviewed and approved or disapproved by the district court. *See* Minn. Stat. § 176.43 (1949) (commission's findings and decision "may be approved or disapproved in the same manner as * * * the report of a referee"). The current workers' compensation laws require no district court intervention; rather, decisions are final, effective, and binding when rendered by the administrative workers' compensation judges. Minn.Stat. §§ 176.281, 176.371 (1996). Thus, the current Workers' Compensation Act, under the majority's view and under strict adherence to *Breimhorst*, does not satisfy *Breimhorst*'s first criterion. If that criterion is still valid law, the Workers' Compensation Act violates the separation of powers doctrine and is unconstitutional.

In my view, *Breimhorst*'s first criterion is no longer the law. Rather, *Mack* represents the contemporary refinement of *Breimhorst*. In *Mack*, the challenge was directed at the authority of the Workers' Compensation Court of Appeals to regulate attorney fees according to a statutory fee structure. 333 N.W.2d at 752. The challengers argued that the regulation of attorney fees was inherently a judicial function and that legislative limits on the fees violated the separation of powers doctrine. *Id.* The supreme court disagreed, noting that the issue of attorney fees was ultimately within the supreme court's "plenary and summary authority to control." *Id.* (quoting *Hollister v. Ulvi*, 199 Minn. 269, 277, 271 N.W. 493, 497 (1937)). *Mack* also held that the fee process did not violate the separation of powers because "[i]n our view, final authority over attorney fees is not given to a nonjudicial body, since ultimately we can review all attorney fees decisions." *Id.* The court then quoted the *Breimhorst* test and held: "*By the same reasoning*, power in the commission to set attorney fees is constitutionally permissible, because these awards are reviewable by this court." *Id.* at 753 (emphasis added).

It is significant that *Mack* did not include the first *Breimhorst* criterion (district court review) in providing the reason that the administrative fee process is constitutionally permissible. *Mack* did not include district court review because it could not do so under the version of workers' compensation it reviewed in 1983. By that time, the district court intervention contemplated by the 1949 *Breimhorst* decision no longer existed in the Workers' Compensation Act. The court could not, therefore, accurately include it as a precondition to a properly separate exercise of powers. *Mack* should be read as a modification of the *Breimhorst* criteria. *Mack* implicitly abandoned the necessity of district court intervention as a precondition to a proper delegation of authority under the separation of powers doctrine, at least where appellate review is available.

The majority states that I have interpreted *Mack* as reducing the test for separation of powers to the single criterion of the availability of appellate review, and that such a rule "would permit the legislature to make wholesale transfers to an administrative agency of what were traditionally judicial functions * * * ." Actually, I indicated that *Mack* also adopted the *reasoning* of *Breimhorst*. The *Breimhorst* reasoning encompasses more than the two stated mechanical criteria of district court approval and availability of appellate review. The threshold constitutional question was whether the creation of the

workers' compensation system was a proper exercise of the legislature's police power. *Breimhorst*, 227 Minn. at 429–30, 35 N.W.2d at 732. *Breimhorst* reasoned that the legislature properly exercised its police power because the subject was of vital public interest and there was a reasonable need for regulation. *Id.* at 430, 35 N.W.2d at 733. *Breimhorst* further reasoned that the workers' compensation system was an adequate substitute for the common law cause of action and the constitutional right of jury trial that were abolished by the enactment of the workers' compensation laws. *Id.* at 433–36, 35 N.W.2d at 734–36.

Reading *Breimhorst* and *Mack* together, which we must do, the separation of powers test has four components: (1) there is a vital public interest in the subject; (2) there is a reasonable need for statutory regulation; (3) the system of regulation is an adequate substitute for the procedures that formerly existed; and (4) there is a right of appellate review.

I believe that this synthesis of *Breimhorst* and *Mack* reflects the nature, purpose, and historical foundation of the doctrine of separation of powers and provides for the absolute retention of the most significant "check" on the exercise of governmental power, namely appellate review with authority to reverse and remand to ensure compliance with the law. Because judicial appellate review of administrative child support decisions is available, the "whole" power of the judicial branch is not exercised by the executive branch. The judicial branch fully retains the authority to scrutinize administrative child support decisions in the same manner and by the same standards as it may with respect to judicial child support decisions. The judicial branch fully retains the authority to correct errors to ensure compliance with the law. *Breimhorst* and *Mack* are satisfied in both the workers' compensation and the administrative child support and maintenance frameworks.

Finally, it is appropriate to briefly address a few of the majority's additional points. The majority expresses concern about the scope of the transfer of functions to ALJs under section 518.5511, suggesting that the statute allows ALJs to virtually usurp the authority of judges. Actually, the statute gives an ALJ the powers of a district judge only as to child support, maintenance and parentage issues and *only when the public authority is involved.* Minn.Stat. § 518.5511, subd. 1(b). ALJs are given no jurisdiction over domestic abuse, custody and visitation, or property issues and cannot issue contempt orders with jail sentences unless the district court approves. *Id.,* subds. 1(b), 4(b). Furthermore, when such issues are combined with support issues, parties have a right to be heard in district court. *Id.,* subd. 1(b).

The majority appears to suggest that the transfer of limited child support matters to the ALJs deprives parties of the opportunity to have the district court exercise its "inherent power to grant *equitable* relief." In reality, however, judges and ALJs are mandated to apply mechanical, statutory, child support guidelines and are subject to specific restrictive criteria for any deviation. Minn.Stat. § 518.551. There is very little room for even the exercise of *discretion*, let alone the exercise of broader "equitable" powers.

The majority states that:

> Because many support orders and all maintenance orders originate in district court, the administrative child support process thus places the ALJs in the constitutionally untenable position of reviewing and modifying judicial decisions.

This characterization is misleading because it suggests that ALJs have power to review district court awards and discretion as to the enforcement of those awards. There is no such power or discretion. Presumably, the majority is referring to the ALJs' ability to modify previous orders. Such authority is available only if there has been a substantial change of circumstances since the entry of the previous order. Minn.Stat. § 518.64, subd. 2 (1996). Thus, if an ALJ modifies a previous district court child support order, the ALJ will always be doing so on the basis of substantially different facts.

Lastly, the majority relies on several cases from foreign jurisdictions as persuasive. Of those cases, one involved a statute drafted in response to the same federal mandate that prompted the Minnesota statute. *See Drennen v. Drennen,* 229 Neb. 204, 426 N.W.2d 252 (1988). The *Drennen* case is not persua-

sive because as early as 1920 the Nebraska Supreme Court held that under the Nebraska Constitution Nebraska district courts have equity jurisdiction that may be exercised without legislative enactment. *Id.,* 426 N.W.2d at 259 (citing *Matteson v. Creighton University,* 105 Neb. 219, 179 N.W. 1009 (1920)). In 1981, the Nebraska Supreme Court reaffirmed its 1920 holding in *Matteson. Id.* (citing *Omaha Fish and Wildlife Club, Inc. v. Community Refuse, Inc.,* 208 Neb. 110, 302 N.W.2d 379 (1981)). *Drennen* also reconfirmed that since 1939, Nebraska specifically found jurisdiction over divorce and child support orders in the equity powers of its district courts. *Id.* (citing *Wassung v. Wassung,* 136 Neb. 440, 286 N.W. 340 (1939)). Based upon Nebraska's precedential construction of its state constitution, *Drennen* easily concluded that the Nebraska Ref-

eree Act was unconstitutional because it removed original jurisdiction from the district court. *Id.* Minnesota has no similar constitutional history.

I remain unpersuaded *beyond a reasonable doubt* that Minn.Stat. § 518.5511 violates the separation of powers mandate of the Minnesota Constitution. I would, therefore, deny the challenge and sustain the constitutional validity of the statute.

TOUSSAINT, Chief Judge (concurring in part, dissenting in part).

I join in the concurrence/dissent of Judge SHUMAKER.